AERONCA INDEPENDENT UNION, Plaintiff v. AERONCA MANUFACTURING CORPORATION, Defendant.

Common Pleas Court, Butler County.

No. 76440. Decided September 22, 1958.

Sol Goodman, Stanley Goodman, Cincinnati, for plaintiff.

Edwin B. Pierce of Fitton, Pierce & Black, Hamilton, Gordon J. Wolf of Cohen & Wolf, Cincinnati, George Bott, Washington, D. C., for defendant.

## OPINION

By CRAMER, J.

This cause has been submitted to and is before the Court upon the pleadings, the evidence, oral arguments, and briefs of the parties.

The plaintiff has demurred to the first, second, third and fourth defenses set forth in the defendant's amended answer. The Court reserved a ruling on the demurrer and evidence was offered in support of the defenses on the theory that if the Court overruled the demurrer

the evidence so submitted would be available for consideration by the Court on the merits of the entire case.

The facts as gleaned from the pleadings, admissions and stipulations of the parties are as follow:

Plaintiff is an unincorporated association of employees in the plants of the defendant and the action is brought by such plaintiff as the agent and representative of all the employees in the plants of the defendant and for and on behalf of said employees, members of plaintiff.

On March 3, 1955, plaintiff and the defendant entered into a labor agreement, the plaintiff being the collective bargaining representative of defendant's employees. This agreement contained a Maintenance of Membership and Check-off provisions set forth in paragraphs two and three of Section C thereof.

Said paragraphs two and three of such agreement are as follow:

"2.) During the term of this agreement the company, for said employees shall deduct from the last pay period of each month the Union dues for the current month and promptly remit the same to the Treasurer of the Union providing the employee has worked forty hours or more during the month. If the employee has no pay coming for the last pay period of the month, or has worked less than forty hours during the month, it shall be deducted from the first pay check thereafter.

"3.) The Union shall promptly furnish the company a card authorizing all pay deductions in a form agreeable to the Company and the Union."

Pursuant to the provisions of the agreement plaintiff furnished the defendant with the written authorization cards signed by employees of the defendant—the pertinent provisions of which were to the effect that the defendant was authorized to deduct from the employees' earnings monthly dues not to exceed fifty cents; that any sums so deducted were to be remitted by the Company to the plaintiff Union in accordance with the provisions of the bargaining agreement by the Company and the Union; the authorization was to remain in effect until revoked by the employee and was irrevocable for a period of one year from the date thereof or the termination date of the collective bargaining agreement of the Company and the Union, whichever occurred sooner.

The aforesaid bargaining agreement between plaintiff and defendant was for a term of three years and was to continue in full force and effect until March 3, 1958, and thereafter for an additional term of three years unless notice of any change was given by either party.

On and after July 1, 1957, the defendant refused to deduct union dues from the paychecks of its employees, but paid said employees their respective wages without making the deductions provided for by the contract and authorization cards.

In January of 1958, 645 employees delivered to the defendant written revocations of its authority to make pay deductions of said Union dues. That in the case of each employee who executed such revocation a period of one year from the date of the authorization card had expired prior to June 20, 1957. Said revocations contained statements to the effect that the employees withdrew from membership in the plaintiff Union. There-

in the defendant was likewise notified that it was to make no deductions from the employees' pay for dues or assessments for membership in the plaintiff after June 1, 1957.

It appears by stipulation of the parties here that if the defendant had checked off the total amounts from the employees wages to be paid over to the Union between the months of July, 1957 and February of 1958, that a total would have been $3677.00.

It is further stipulated that if the Court would find that the foregoing revocations were valid the amount which would have been checked off from the wages of the employees not so revoking said authorization, would have been the sum of $1108.50.

During the trial of the cause the defendant offered exhibits "4" and "5." The plaintiff objected to said exhibits going in to evidence solely for the reason that the same were not relevant. The court reserved a ruling to the admission of said exhibits at the time, but now finds that the objections thereto on the ground stated should be overruled and the same are received in evidence.

It appears from the evidence that Exhibit "5," which is a handbill entitled, "They Couldn't Help You," and contains statements of a past President and the then current President of plaintiff, calling upon the membership to support the UAW-CIO Union. These leaflets were distributed immediately prior to the National Labor Relations Board election of August 2, 1957, at defendant's plan by members of the U.A.W. and the then President of plaintiff.

The Court now admits into evidence the stipulation entered into between the parties that if witnesses were called with respect to a speech made by the President of plaintiff on the radio on the eve of the National Labor Relations Board election they would testify that said President made the statement, "That after the election was over, that the independent Union could distribute its funds—they could have a party, or give the money to charity—whatever it had in the treasury— or that they could bury it in the ground."

We likewise now admit into evidence the agreement between the parties to the effect that if witnesses were called they would testify that no officer of the plaintiff at the last National Labor Relations Board election campaigned as an officer of the independent Union for a "no" vote. That is, with respect to the U.A.W. as an organization, it did not campaign for a "no" vote.

Exhibit No. 4 is a "U.I.W. news-letter" wherein the officers and ooard of the plaintiff "apologize again for the Company's actions."

On August 2, 1957, the National Labor Relations Board conducted an election. The vote was in favor of "no Union" and on May 2, 1958, the National Labor Relations Board made its finding that "petition (plaintiff) is not the exclusive representative of the effected employees for purposes of collective bargaining."

The defendant sets up five defenses, the fifth being a general denial.

Under its first defense the defendant claims that the plaintiff's petition puts in issue the question of whether defendant's conduct with respect to the bargaining agreement under the circumstances constituted an unfair labor practice on the part of the defendant within the meaning

of the National Labor Relations Act and that exclusive jurisdiction of the subject matter of plaintiff's petition is vested in the National Labor Relations Board and that this court has no jurisdiction of the subject matter of this action.

In support of this contention the defendant has submitted an able and exhaustive brief containing many respectable authorities.

We must admit that this defense is quite persuasive and has considerable merit. However, we remain unconvinced that the law, in respect to this issue, is as the defendant asserts it to be.

The following recent cases of our own Supreme Court and of the United States, while they were actions involving claims by an employee against his Union, and in that respect not comparable to the case at bar, nevertheless came to conclusions respecting the jurisdiction of state courts wherein unfair labor practices are involved:

**Perco, Appellant v. Local 207, et al, etc., 168 Oh St p. 161** (July 7, 1958 issue Ohio Bar); International Association of Machinists, etc., et al, Petitioners, v. Marco Gonzales, 78 S. Ct., 923; International Union, et al., Petitioners, v. Paul S. Russell, 78 S. Ct., 932.

(Both of these causes decided by Supreme Court of the United States on May 26, 1958)

Justice Frankfurter in the Gonzales case supra made this observation:

"The statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature, to be translated into concreteness by the process of litigating elucidation."

We cannot but conclude that the federal law has not preempted the field so as to exclude the State Courts from determining whether or not a "contract"—even though it be a collective bargaining agreement—has been breached, and if so, to give a remedy therefor to the party damaged by such breach.

We therefore sustain the demurrer of the plaintiff to the defendant's first defense on the ground that it does not set forth grounds constituting a defense.

Under the second defense, the allegations of which plaintiff's demurrer admits, it is alleged that during the continuance of this contract and prior to July 1, 1957 a rival Union—the United Automobile, Aircraft and Agricultural Implement Workers of America, Congress of Industrial Organizations (hereinafter referred to as UAW-CIO) had filed petitions with the National Labor Relations Board seeking to have itself declared the representative of the employees of the defendant for purposes of collective bargaining; that an election was ordered held on August 2, 1957; that the officers and trustees of plaintiff association deliberately and intentionally refused to sign the necessary "Non-Communist" affidavits and financial statements with the National Labor Relations Board, intending thereby to prevent the plaintiff association from securing a place on the ballot, thereby better enabling the UAW-CIO to secure a majority of the votes cast and substitute itself for the plaintiff Union. It is further alleged in this defense that the officers of plaintiff association publicly stated that the plaintiff association had abandoned its

representation of defendant's employees and that it had abandoned its representation.

It is then urged that the purpose of the bargaining agreement between plaintiff and defendant as set forth in "Article II—Purpose of Agreement," was to promote "orderly industrial relations." That the plaintiff association, as shown by the statements of its officers could not and was not functioning as a representative of the employees, and that the same constituted an abandonment and repudiation of the agreement, all of which justified the defendant in its refusal to further perform its obligations under the agreement.

In respect to the failure of, or the refusal of the plaintiff's officers to sign the necessary Non-Communist affidavits and financial statements with the National Labor Relations Board and to comply with Section 9 (f), (g), and (h) of the National Labor Relations Act as amended, the case of United Mine Workers of America, et al, Petitioners, v. Arkansas Oak Flooring Co., 351 U. S., 62, is most helpful.

In that case a majority of the employees of an employer, subject to the National Labor Relations Act, as amended, chose as their bargaining representative a union which had failed to file with the Secretary of Labor their financial and other data required by Section (f) and (g), and with the National Labor Relations Board the Non-Communist affidavits required by Section 9 (h). To compel the employer to recognize the Union the employees struck and set up a peaceful picket line. The Louisiana State Courts enjoined such picketing.

In an opinion by Burton, J., seven members of the Supreme Court held that the State courts had no power to enjoin the picketing. The decision was rested on the ground that under the federal act the employer was bound to recognize the union as the bargaining representative of its employees and that while the union, because of its noncompliance with Section 9 (f), (g), and (h), could not resort to the National Labor Relations Board, it could take other lawful action, such as peaceful picketing.

In the course of the opinion Justice Burton stated the following:

"The issue before us thus turns upon the effect of the union's choice not to file the information and affidavits described in Section 9 (f), (g) and (h). The state court misconceived that effect. The union's failure to file was not a confession of guilt of anything. It was merely a choice not to make public certain information. The Act prescribes no fine or penalty, in the ordinary sense, for failure to file the specified data and affidavits. The Act does not even direct that they be filed. The nearest to such a direction in the Act is the statement, in Section 9 (g), that it shall be 'the obligation' of all labor organizations to file annual reports 'bringing up to date the information required to be supplied in the initial filing by subsection (f) (A) of this section, and to file with the Secretary of Labor and furnish to its members annually financial reports in the form and manner prescribed in subsection (f) (B).' However, neither subsection (f) (A) nor (f) (B) of Section 9 requires any initial filing to be made. Each merely describes what is required to be filed in the event that a labor organization elects to seek the advantages offered by subsection (f)."

"There is no provision stating that, under those circumstances, the union may not represent an appropriate unit of employees if a majority of those employees give it authority so to do. Likewise, there is no statement precluding their employer from voluntarily recognizing such a noncomplying union as their bargaining representative."

"Subsections (f), (g) and (h) of Section 9 merely describe advantages that may be gained by compliance with their conditions. The very specificity of the advantages to be gained and the express provision for the loss of these advantages imply that no consequences other than those so listed shall result from noncompliance."

"The noncompliance of the union with Section 9 (f), (g) and (h) in the instant case precludes any right of the union to seek certification of its status by the Labor Board. Such elimination of the Board does not, however, eliminate the applicability of the National Labor Relations Act, as amended, and does not settle the issues as to the right of the state court to enjoin the employees and their union from peacefully picketing the employer's plant for the purpose of securing recognition."

"Under those sections and by virtue of the conceded majority designation of the union, the employer is obligated to recognize the designated union. Upon the employer's refusal to do so, the union, because of its noncompliance with Section 9 (f), (g) and (h), cannot resort to the Labor Board. It can, however, take other lawful action such as that engaged in here."

We therefore conclude that the plaintiff's failure to file the affidavits and data with the National Labor Relations Board cannot be taken advantage of by the defendant in this action, nor does it constitute a breach of the agreement in question on the part of the plaintiff so as to preclude it from seeking the relief prayed for, if plaintiff is otherwise entitled to such relief.

Now as to the claim of the defendant that the described conduct of plaintiff's officers in switching their allegiance to the UAW-CIO as constituting a repudiation and abandonment of the agreement in issue, we merely state that such activities and conduct on the part of the officers and trustees of plaintiff Union could not and did not operate as a repudiation and abandonment of the agreement herein.

There is no evidence here from which we could find that the officers conduct was authorized, approved or confirmed by the members and certainly such conduct was not within the scope of authority of such officers, so as to bind the entire membership if we view their relationship to the Association as agents of their principal, the plaintiff herein.

Furthermore, all during this time plaintiff still remained the recognized bargaining agent and did not cease to become such until after the expiration of the agreement, when on May 2, 1958, the National Labor Relations Board determined that plaintiff no longer was the representative of the employees for the purpose of collective bargaining.

The situation found here is comparable to that found when a considerable portion of the electorate becomes dissatisfied with and critical of an elected public official. It cannot be said that such complaints and dissatisfaction, wide-spread though they may be, are of themselves sufficient to deny the official the status he has achieved by having been elected to the office he is then filling.

We therefore conclude that the conduct and activities of the officers of the plaintiff Union, though perhaps subject to condemnation, is likewise insufficient to constitute a defense. to defendant's failure to comply with this bargaining agreement and insufficient to deny plaintiff a recovery on the contract if it is otherwise entitled thereto.

What we have hereinbefore stated in respect to our conclusions as to the second defense likewise is applicable and with equal force to the defendant's third defense which, to some extent, is a re-assertion of the matters set forth in the second defense with the additional claim that plaintiff's authority to act for the defendant's employees having ceased, a failure of consideration arose which relieved the defendant from complying with the agreement.

We find, for the reasons hereinbefore stated, that the third defense does not state facts sufficient to constitute a defense. We therefore sustain plaintiff's demurrer to both the second and third defenses.

Under its fourth defense the defendant asserts that it made no deductions for the month of August 1957 or thereafter from the paychecks of the plaintiff's members on account of the dues claimed by the plaintiff association and that the amounts which would otherwise have been deducted were paid directly to the members of the plaintiff and that since the within action is brought by the plaintiff on behalf of its members and the plaintiff has no entity separate from that of each of the members, there can be no recovery unless it be for nominal damages only.

The defendant argues that since it no where admits that it is indebted in any sum to the plaintiff, the burden of course is upon it to establish what sum, if any, might be owing to it.

It is further asserted that at most plaintiff can recover only a sum equal to the pay deductions which it was authorized to make under the unrevoked authorizations, that is, the sum of $1108.50.

Secondly, it is claimed that defendant can have been guilty at most of only a nominal breach of contract and no special damages having been proven, the plaintiff, being an unincorporated association, can recover no more than nominal damages and costs.

The plaintiff asserts that the withdrawal of the authorizations for pay deductions by the employees could not operate so as to be effective retroactively. Since such authorizations were not executed until January 1958, they could only operate prospectively and not back to July 1, 1957.

It is our view, however, that since the defendant made no deductions from the pay of the employees executing the revocations after July 1, 1957, the revocations, when actually delivered to it by the employees affected in January 1958, were effective to and did constitute a ratification of the defendant's acts in failing to make pay deductions. This must be so since each of such employees were paid direct after July 1, 1957, the sums which would otherwise have been deducted from their pay to be given over to the plaintiff.

It must be pointed out that the authorizations for the pay deductions provided that the same were revocable after the expiration of a certain period of time.

It is likewise apparent that plaintiff's position has not been worsened by the fact that the deductions were not made during the period in question for the reason that the dues of such employees are still owed to the plaintiff. This situation prevails if we consider that such employees withdrawal from membership in the Union (the pay deduction authorizations also constituting withdrawals from membership) did not become effective as such until January 1958.

It is therefore our finding that the revocations of the employees were effective as of July 1, 1957 and if plaintiff is otherwise entitled to recover, such recovery would be limited to the sum of $1108.50.

It is contended, as hereinbefore pointed out, that plaintiff can recover, if at all, only nominal damages since defendant could have been guilty at most of only a nominal breach of contract and no special damages were proven.

There was, of course, no evidence as to any special damages offered by plaintiff as a result of the breach of contract.

Ordinarily, in an action of this kind, plaintiff's recovery would be limited to a sum equal to the pay deductions which it was authorized to make (that is, by the unrevoked authorizations), and did not make.

Plaintiff here is an unincorporated association and has no entity separate and distinct from its individual members, and in this case the employees from whose pay no deductions were made.

We do not regard unincorporated associations as legal entities, under the law, except to the extent that they are so recognized by statute. Such associations have no status distinct from the persons composing them. They are considered merely as constituting groups of individuals under a common name and bound together by contractual relationship.

See 5 O. Jur., second, Section 3, pages 436-7

It is true that by virtue of certain statutory provisions an unincorporated association may sue on behalf of those who are members and in its own behalf and be sued as an entity under the name by which it is commonly known and called.

See §1745.01 R. C.

In that case, however, the members are the real parties in interest.

An association, such as the plaintiff herein, must be considered identical with its membership. Our Supreme Court, in the case of **Koogler v. Koogler, 127 Oh St 57**, held that an association cannot be made liable for a tort committed by it upon one of its members, since the member would be in effect suing himself.

We find, in the Annotation, Volume 14, A. L. R., second, page 473, the following:

"This rule as to the proper mode of suing an unincorporated association, which is primarily a rule of procedure, applicable alike whether the suit is by a third person or by a member against the association, should not, however, be confused with the substantive question as to the right of a member to sue the association to recover damages for a tort committed against him by the association or by another member thereof. The former question does not arise until the latter question has been answered affirmatively."

We agree with counsel for the defendant in its claim that the con-

tract here in question created no trust "of which either the plaintiff association or the individual members were beneficiaries;" nor was such a trust otherwise created.

We are further in agreement with the defendant in its contention that "no debt is created by the terms of the contract relied on by the plaintiff association."

No debt was created by the terms of the contract itself since the pay deductions were to be made by the defendant only upon the same being earned and that, of course, was to take place in the future. No obligation to make payment of wages arose until after the same were earned and until that time no debt ran from the defendant to the individual employee.

Furthermore, even if the plaintiff association be considered as an entity separate and apart from its members (which is not true here), still it had no right as a creditor to the wages of the employees which should have been but were not withheld. Plaintiff merely had the contractual right to have the same withheld by the defendant.

A debtor and creditor relationship existed between the defendant and the individual employees when and as the wages were earned. Here, the defendant discharged such obligation by paying to each of the employees his full wages without deductions therefrom.

Upon breach of the agreement by the defendant to withhold, a cause of action in favor of plaintiff arose giving it a right to recover the amount not withheld. Such breach of contract did not create an obligation to pay the money not so withheld.

The employee members of the plaintiff have already received full payment of all wages due them. They are not entitled to have paid to them any further sums which result would obtain if the defendant were required to pay to plaintiff the dues not withheld.

Insofar as the evidence shows, as hereinbefore stated, the individual employees are still indebted to the plaintiff for their dues during the period here in question, at least those employees who did not withdraw from membership would still owe such dues.

These employees certainly are not entitled to a double satisfaction which would result if the defendant was required to pay plaintiff the amount it seeks to recover as such dues.

It is our conclusion that we have here a situation wherein plaintiff has sustained a legal injury without damage (injuris absque damnum).

The defendant has been guilty of but a nominal breach of contract, and no special damages having been shown, it is entitled to recover nothing more than nominal damages.

It follows from what we have hereinbefore stated that the plaintiff's demurrer to this particular defense must be overruled.

We therefore find, upon the issues raised by the fourth and fifth defenses to the petition that plaintiff is entitled to recover but nominal damages which we hereby fix in the sum of one ($1.00) dollar, and also its costs herein expended. Judgment will accordingly therefore be awarded plaintiff and against the defendant.

An entry may be prepared in accordance with this opinion.