## Dougherty v. State Automobile Insurance Association

*Bernard V. O'Hare, III*, for petitioner.
*Joseph Leeson* and *Anthony Santore*, for respondent.

FRANCIOSA, *J.*, December 27, 1978—This matter comes before the court on a petition for no-fault benefits. From a stipulated record we make the following

## FINDINGS OF FACT

1. Petitioner, Dennis R. Dougherty, is an individual residing at RD #3, in Bethlehem, Northampton County, Pa.

2. Respondent, State Automobile Insurance Association, is a corporation in the Commonwealth of Pennsylvania.

3. Respondent regularly conducts business through its agent, Weiss-Shantz Agency, 1053 Main Street, Hellertown, Northampton County, Pa.

4. Petitioner had been issued an insurance policy by respondent, and such policy was in effect on May 19, 1978.

5. On May 19, 1978, petitioner was informed that his son, John Dougherty, had been struck in the mouth by a softball and was injured.

6. On May 20, 1978, petitioner's son was treated by Doctors Miller and Zahm. At that time petitioner was informed that further therapy and orthodontic work was necessary.

7. On May 22, 1978, petitioner learned that John had, in fact, been injured in an automobile accident.

8. Petitioner informed Weiss-Shantz Agency on June 5, 1978, of the automobile accident and told them that a police report had been filed. Petitioner also informed defendant's agent of the conflicting report given to him earlier by his son.

9. On July 5, 1978, proof of the amount of loss was requested by respondent from Saint Luke's Hospi-

tal which replied that treatment had been for a softball accident. Their bill for $21 was subsequently received and paid by respondent on September 14, 1978.

10. On August 4, 1978, petitioner telephoned the agency to inform them that Doctor Cook wanted an advance payment of $300 before he would begin work.

11. On August 7, 1978, a bill was submitted to respondent by Doctor Arnold Cook for services rendered on June 9, 1978, in the amount of $125 which was paid on September 14, 1978. He also provided an estimate for future work for $2,140.

12. On August 8, 1978, respondent ascertained from an interview with Bonnie Sherer and Jeffrey Rowe, passengers in the automobile, that the loss had occurred in an automobile accident.

13. On September 1, 1978, petitioner was informed by Doctors Miller and Zahm that a bill for $15 was submitted to respondent, but respondent, to date, has no record of receiving it.

14. On September 6, 1978, respondent was informed by letter that petitioner had retained the law firm of O'Hare and Heitczman in regard to this claim.

15. On September 14, 1978, a bill was submitted by Doctor Bruce M. Wechtler, to respondent, for two billings totalling $38 and these bills were paid on September 14, 1978.

16. On September 25, 1978, Doctor Cook called up again to inform respondent he needed a down payment of $300 before he could begin work. Respondent refused to pay before completion of the work.

17. On October 13, 1978, Doctor Cook, by telephone, agreed to accept payment as he completed

the work. This was confirmed by respondent by letter of October 18, 1978.

18. This action was instituted by petitioner on October 13, 1978.

19. On October 25, 1978, respondent paid a bill presented by Saint Luke's Hospital to respondent in the amount of $172, which counsel concludes covered a $15 bill of Doctor Whitman.

## DISCUSSION

The primary issue presented for decision is whether an insurer, pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L 489, 40 P.S. §1009.101 et seq., is required to pay an estimated down payment which a doctor demands prior to providing any medical treatment and whether such refusal constitutes a penalty under the act by which the insurer may be surcharged, or whether the insurer need not pay until the medical treatment is completed. The issue basically concerns the interpretation to be placed upon several sections of the act.

In reviewing the meaning of the statute we are mindful of the legislative intent of the no-fault act, i.e., to establish " . . . a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims . . . " section 1009.102(b). As stated by former Chief Justice Jones in Singer v. Sheppard, 464 Pa. 387, 401, 346 A. 2d 897, 904 (1976), the purpose of the No-fault Act is to substitute, "in the case of relatively minor accidents, the prompt and sure recovery of economic loss for the delayed and uncertain awards of the courts." We are also aware, however, of the arduous task placed upon the courts when confronted with an issue of

statutory construction. As stated by Justice Frankfurter: "statutory implications . . . are of a Delphic nature, to be translated into concreteness by the process of litigating elucidation." International Asso. Machinists v. Gonzales, 356 U.S. 617, 619, 78 S.Ct. 923, 2 L.Ed. 2d 1018 (1958). In that vein, we turn to the merits of the issue presented.

Section 1009.106(a)(1) of the No-fault Act provides that: "No- fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense . . . is sustained." And "'[a]llowable expense' means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for: (A) professional medical treatment and care . . . " section 1009.103. When presented with a claim for no-fault benefits, an insurer must pay such a claim within 30 days or be surcharged at a rate of 18 percent per annum: section 1009.106(a)(2). * In order to fulfill this requirement, section 1009.106(a)(2) provides in part that " . . . [a]n obligation for basic loss benefits for an item of allowable expense may be discharged by the obligor [insurer] by reimbursing the victim or by making direct payment to the supplier . . . "

All of the sections in an act should read in pari materia. See 1 Pa.C.S.A. §1932; 34 P.L.E. 468, §143. When read together, the aforementioned sections convince us that an insurer is not required to

---

*An insurer may, however, reject a claim for basic loss benefits. Such a rejection is governed by section 1009.106(a)(5). The insurer in the present matter has not availed itself of this procedure.

pay no-fault benefits until the medical services have been rendered to recipient.

We do not read the definition of "allowable expense" as implying that an insurer should be required to make payments before the services are actually rendered. The expression in section 1009.103 of "reasonably needed and *used . . .* services" (emphasis supplied) implies that the services have, in fact, already been provided. The use of the conjunctive "and" adds weight to this interpretation. See 34 P.L.E. 451, §134.

In section 1009.106(a)(2) the statute provides that an insurer may discharge his duty by *"reimbursing* the victim or by making direct payment to the supplier or provider of . . . services." (Emphasis supplied.) The use of the word "reimbursing" presupposes payment by the insured. Cf. Maros v. Trans-America Ins. Co., 150 N.J. Super. 157, 375 A. 2d 272, 273 (1977). Or the insurer may pay the actual "supplier" or "provider", not the expected or potential supplier or provider. This interpretation comports with the reasonably expected process of submitting medical bills, which establishes medical services were actually provided, in order to provide the insurer with "reasonable proof of the . . . amount of loss sustained." section 1009.106(a)(2).

By construing the No-fault Act as requiring prior services rendered before payment is due from an insurer, we do not believe such an interpretation runs afoul of the legislative intent of the act. Rather, such an interpretation appears to be necessary in order to provide a "low-cost, comprehensive, and fair system" of compensation: section 1009.102(a)(4). Requiring the insurer to pay esti-

mates prior to services being actually performed would, in the long run, create additional bureaucratic expense, delay, and policing which would hamper the legislative intent of the act. Moreover, we believe that the majority of those persons or agencies providing medical services will do so without advance payment upon proof of no-fault coverage. We, therefore, consider the demand for prepayment made by Dr. Cook in this case to be an exception from, rather than, the general rule.

The secondary issue concerns whether or not there has been any overdue payment by respondent, after receiving notice of petitioner's representation by counsel, which would justify an award of reasonable attorney's fees. The only surcharge necessary against respondent concerns their late payment of Dr. Cook's August 7, 1978, bill of $125. Respondent did not make payment on the bill until September 14, 1978, approximately eight days over the statutory 30-day requirement. Hence, respondent is to be surcharged 18 percent per annum for the $125 bill for the eight days. Since petitioner had retained counsel on September 6, 1978, the day respondent was required to make payment on Dr. Cook's bill of $125, petitioner is entitled to reasonable attorney's fees as set forth in section 1009.107(1). Section 1009.107(1) states that:

"If any overdue no-fault benefits are paid by the obligor after receipt by the obligor of notice of representation of a claimant in connection with a claim or action for the payment of no-fault benefits, a reasonable attorney's fee (based on actual time expended) shall be paid by the obligor to such attorney. No part of the attorney's fee for representing the claimant in connection with such claim or action for no-fault benefits shall be charged or de-

ducted from benefits otherwise due to such claimant and no part of such benefits may be applied to such fee."

Since payment for the bill in paragraph 11, supra, violated the 30-day rule established by section 1009.106(a)(2), respondent is liable for petitioner's reasonable attorney's fees. Although petitioner's counsel has submitted a time sheet which specifies that 22.9 hours were expended in this matter, an hourly rate would lead to a fee which would be completely out of proportion when viewed against the amount in dispute. For that reason, we conclude that a flat fee of $125 is reasonable.

Finally, we do not express any view on the facts set forth in paragraph 13, supra, concerning the bill of Drs. Miller and Zahm since counsel for the respective parties have stipulated that respondent has no record of receiving such billing. As to the other allowable expenses incurred, we find that respondent has met its statutory duty of dispensing payment within 30 days thereof.

Therefore, we enter the following

## ORDER

And now, December 27, 1978, petitioner's claim for an advance draw to cover the orthodontist's demand for a "down payment" is denied and dismissed.

Respondent is, however, required to pay reasonable attorney's fee of $125 for failing to dispense payment of a doctor's bill within the statutory 30-day period.

Since the surcharge is a nominal amount, we leave that matter for resolution of the parties without court intervention.