## INTERNATIONAL ASSOCIATION OF MACHINISTS ET AL. *v.* GONZALES.

No. 31.   Argued December 12, 1957.—Decided May 26, 1958.

*Plato E. Papps* and *Eugene K. Kennedy* argued the cause for petitioners. With them on the brief was *Bernard Dunau.*

*Lloyd E. McMurray* argued the cause and filed a brief for respondent.

Mr. Justice Frankfurter delivered the opinion of the Court.

Claiming to have been expelled from membership in the International Association of Machinists and its Local No. 68 in violation of his rights under the constitution and by-laws of the unions, respondent, a marine machinist, brought this suit against the International and Local, together with their officers, in a Superior Court in California for restoration of his membership in the unions and for damages due to his illegal expulsion. The case was tried to the court, and, on the basis of the pleadings, evidence, and argument of counsel, detailed findings of fact were made, conclusions of law drawn, and a judgment entered ordering the reinstatement of respondent and awarding him damages for lost wages as well as for physical and mental suffering. The judgment was affirmed by the District Court of Appeal, 142 Cal. App. 2d 207, 298 P. 2d 92, and the Supreme Court of California denied a petition for hearing. We brought the case here, 352 U. S. 966, since it presented another important question concerning the extent to which the National Labor Relations Act, 49 Stat. 449, as amended, 29 U. S. C. §§ 141–188, has excluded the exercise of state power.

The crux of the claim sustained by the California court was that under California law membership in a labor union constitutes a contract between the member and the union, the terms of which are governed by the constitution and by-laws of the union, and that state law provides, through mandatory reinstatement and damages, a remedy for breach of such contract through wrongful expulsion. This contractual conception of the relation between a member and his union widely prevails in this country and has recently been adopted by the House of Lords in *Bonsor* v. *Musicians' Union,* [1956] A. C. 104. It has been the law of Cali-

fornia for at least half a century. See *Dingwall* v. *Amalgamated Assn. of Street R. Employees,* 4 Cal. App. 565, 88 P. 597. Though an unincorporated association, a labor union is for many purposes given the rights and subjected to the obligations of a legal entity. See *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344, 383–392; *United States* v. *White,* 322 U. S. 694, 701–703.

That the power of California to afford the remedy of reinstatement for the wrongful expulsion of a union member has not been displaced by the Taft-Hartley Act is admitted by petitioners. Quite properly they do not attack so much of the judgment as orders respondent's reinstatement. As *Garner* v. *Teamsters Union,* 346 U. S. 485, could not avoid deciding, the Taft-Hartley Act undoubtedly carries implications of exclusive federal authority. Congress withdrew from the States much that had theretofore rested with them. But the other half of what was pronounced in *Garner*—that the Act "leaves much to the states"—is no less important. See 346 U. S., at 488. The statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature, to be translated into concreteness by the process of litigating elucidation. See *Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468, 474–477.

Since we deal with implications to be drawn from the Taft-Hartley Act for the avoidance of conflicts between enforcement of federal policy by the National Labor Relations Board and the exertion of state power, it might be abstractly justifiable, as a matter of wooden logic, to suggest that an action in a state court by a member of a union for restoration of his membership rights is precluded. In such a suit there may be embedded circumstances that could constitute an unfair labor practice under § 8 (b)(2) of the Act. In the judgment of the

Board, expulsion from a union, taken in connection with other circumstances established in a particular case, might constitute an attempt to cause an employer to "discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership . . . ." 61 Stat. 141, 29 U. S. C. § 158 (b) (2). But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied. The proviso to § 8 (b) (1) of the Act states that "this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein . . . ." 61 Stat. 141, 29 U. S. C. § 158 (b) (1). The present controversy is precisely one that gives legal efficacy under state law to the rules prescribed by a labor organization for "retention of membership therein." Thus, to preclude a state court from exerting its traditional jurisdiction to determine and enforce the rights of union membership would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights. Such a drastic result, on the remote possibility of some entanglement with the Board's enforcement of the national policy, would require a more compelling indication of congressional will than can be found in the interstices of the Taft-Hartley Act. See *United Constr. Workers* v. *Laburnum Constr. Corp.,* 347 U. S. 656.

Although petitioners do not claim that the state court lacked jurisdiction to order respondent's reinstatement, they do contend that it was without power to fill out this

remedy by an award of damages for loss of wages and suffering resulting from the breach of contract. No radiation of the Taft-Hartley Act requires us thus to mutilate the comprehensive relief of equity and reach such an incongruous adjustment of federal-state relations touching the regulation of labor. The National Labor Relations Board could not have given respondent the relief that California gave him according to its local law of contracts and damages. Although, if the unions' conduct constituted an unfair labor practice, the Board might possibly have been empowered to award back pay, in no event could it mulct in damages for mental or physical suffering. And the possibility of partial relief from the Board does not, in such a case as is here presented, deprive a party of available state remedies for all damages suffered. See *International Union, United Automobile Workers* v. *Russell, post,* p. 634.

If, as we held in the *Laburnum* case, certain state causes of action sounding in tort are not displaced simply because there may be an argumentative coincidence in the facts adducible in the tort action and a plausible proceeding before the National Labor Relations Board, a state remedy for breach of contract also ought not be displaced by such evidentiary coincidence when the possibility of conflict with federal policy is similarly remote. The possibility of conflict from the court's award of damages in the present case is no greater than from its order that respondent be restored to membership. In either case the potential conflict is too contingent, too remotely related to the public interest expressed in the Taft-Hartley Act, to justify depriving state courts of jurisdiction to vindicate the personal rights of an ousted union member. This is emphasized by the fact that the subject matter of the litigation in the present case, as the parties and the court conceived it, was the breach of a contract governing the

relations between respondent and his unions.* The suit did not purport to remedy or regulate union conduct on the ground that it was designed to bring about employer discrimination against an employee, the evil the Board is concerned to strike at as an unfair labor practice under § 8 (b)(2). This important distinction between the purposes of federal and state regulation has been aptly described: "Although even these state court decisions may lead to possible conflict between the federal labor board and state courts they do not present potentialities of conflicts in kind or degree which require a hands-off directive to the states. A state court decision requiring restoration of membership requires consideration of and judgment upon matters wholly outside the scope of the National Labor Relations Board's determination with reference to employer discrimination after union ouster from membership. The state court proceedings deal with arbitrariness and misconduct vis-à-vis the individual union members and the union; the Board proceeding,

---

*"In determining the question of whether the exclusive jurisdiction to grant damages in a case of this kind lies in the Labor Relations Board, it is first necessary to determine the character of the pleadings and issues in this case. The petition alleged a breach of contract between the union and plaintiff, one of its members. . . . It took the form of a petition for writ of mandate because damages alone would not be adequate to restore to petitioner the things of value he had lost by reason of the breach. No charge of 'unfair labor practices' appears in the petition. The answer to the petition denied its allegations and challenged the jurisdiction of the court, but said nothing about unfair labor practices. The evidence adduced at the trial showed that plaintiff, because of his loss of membership, was unable to obtain employment and was thereby damaged. However, this damage was not charged nor treated as the result of an unfair labor practice but as a result of the breach of contract. Thus the question of unfair labor practice was not raised nor was any finding on the subject requested of, or made by, the court." 142 Cal. App. 2d 207, 217, 298 P. 2d 92, 99.

looking principally to the nexus between union action and employer discrimination, examines the ouster from membership in entirely different terms." Isaacson, Labor Relations Law: Federal versus State Jurisdiction, 42 A. B. A. J. 415, 483.

The judgment is

*Affirmed.*

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE DOUGLAS joins, dissenting.

By sustaining a state-court damage award against a labor organization for conduct that was subject to an unfair labor practice proceeding under the Federal Act, this Court sanctions a duplication and conflict of remedies to which I cannot assent. Such a disposition is contrary to the unanimous decision of this Court in *Garner* v. *Teamsters C. & H. Local Union,* 346 U. S. 485.

In *Garner,* we rejected an attempt to secure preventive relief under state law for conduct over which the Board had remedial authority. We held that the necessity for uniformity in the regulation of labor relations subject to the Federal Act forbade recourse to potentially conflicting state remedies. The bases of that decision were clearly set forth:

> "Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.[1]

[1] 346 U. S., at 490.

"Further, even if we were to assume, with peti-
tioners, that distinctly private rights were enforced
by the state authorities, it does not follow that the
state and federal authorities may supplement each
other in cases of this type. The conflict lies in
remedies, not rights. The same picketing may
injure both public and private rights. But when
two separate remedies are brought to bear on the
same activity, a conflict is imminent." [2]

The two subsequent opinions of this Court that have
undertaken to restate the holding in *Garner,* one of them
written by the author of today's majority opinion,
confirm its prohibition against duplication of remedies.
*Weber* v. *Anheuser-Busch,* 348 U. S. 468, 479; [3] *United
Constr. Workers* v. *Laburnum Constr. Corp.,* 347
U. S. 656, 663, 665.[4] And if elucidating litigation was
required to dispel the Delphic nature of that doctrine,
the requisite concreteness has been adequately supplied.
This Court has consistently turned back efforts to utilize
state remedies for conduct subject to proceedings for
relief under the Federal Act. *District Lodge 34, Int'l*

---

[2] 346 U. S., at 498–499.

[3] "In *Garner* the emphasis was not on two conflicting labor statutes
but rather on two similar remedies, one state and one federal, brought
to bear on precisely the same conduct."

[4] "In the *Garner* case, Congress had provided a federal administra-
tive remedy, supplemented by judicial procedure for its enforcement,
with which the state injunctive procedure conflicted. . . . The care
we took in the *Garner* case to demonstrate the existing conflict
between state and federal administrative remedies in that case was,
itself, a recognition that if no conflict had existed, the state procedure
would have survived."

And see *Guss* v. *Utah Labor Relations Board,* 353 U. S. 1, 6: "The
National Act expressly deals with the conduct charged to appellant
which was the basis of the state tribunals' actions. Therefore, if the
National Board had not declined jurisdiction, state action would have
been precluded by our decision in *Garner* v. *Teamsters Union,* . . . ."

*Assn. of Machinists* v. *L. P. Cavett Co.,* 355 U. S. 39; *Local Union 429, Int'l Brotherhood of Electrical Workers* v. *Farnsworth & Chambers Co.,* 353 U. S. 969; *Retail Clerks International Assn.* v. *J. J. Newberry Co.,* 352 U. S. 987; *Pocatello Building & Constr. Trades Council* v. *C. H. Elle Constr. Co.,* 352 U. S. 884; *Building Trades Council* v. *Kinard Constr. Co.,* 346 U. S. 933. With the exception of cases allowing the State to exercise its police power to punish or prevent violence, *United A., A. & A. I. W.* v. *Wisconsin Employment Relations Board,* 351 U. S. 266; *Youngdahl* v. *Rainfair, Inc.,* 355 U. S. 131, the broad holding of *Garner* has never been impaired. Certainly *United Constr. Workers* v. *Laburnum Constr. Corp., supra,* did not have that effect. The *Laburnum* opinion carefully notes that the Federal Act excludes conflicting state procedures, and emphasizes that "Congress has neither provided nor suggested any substitute" [5] for the state relief there being sustained.[6]

The principles declared in *Garner* v. *Teamsters C. & H. Local Union, supra,* were not the product of imperfect consideration or untried hypothesis. They comprise the fundamental doctrines that have guided this Court's preemption decisions for over a century. When Congress, acting in a field of dominant federal interest as part of a comprehensive scheme of federal regulation, confers rights and creates remedies with respect to certain conduct, it has expressed its judgment on the desirable scope of regulation, and state action to supplement it is as "conflicting," offensive and invalid as state action in derogation. *E. g., Pennsylvania* v. *Nelson,* 350 U. S. 497; *Mis-*

---

[5] 347 U. S., at 663.

[6] Speaking of the *Laburnum* case in *Weber* v. *Anheuser-Busch,* 348 U. S. 468, 477, the Court stated that "this Court sustained the state judgment on the theory that there was no compensatory relief under the federal Act and no federal administrative relief with which the state remedy conflicted."

*souri P. R. Co.* v. *Porter,* 273 U. S. 341; *Houston* v. *Moore,* 5 Wheat. 1, 21–23. This is as true of a state common-law right of action as it is of state regulatory legislation. *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426. As recently as *Guss* v. *Utah Labor Relations Board,* 353 U. S. 1, we had occasion to re-emphasize the vitality of these pre-emption doctrines in a labor case where, due to NLRB inaction, the conduct involved was either subject to state regulation or it was wholly unregulated. We set aside a state-court remedial order directed at activity that had been the subject of unfair labor practice charges with the Board, declaring that: "the [secession of jurisdiction] proviso to § 10 (a) is the exclusive means whereby States may be enabled to act concerning the matters which Congress has entrusted to the National Labor Relations Board." [7]

That the foregoing principles of pre-emption apply to the type of dispute involved in this case cannot be doubted. Comment hardly need be made upon the comprehensive nature of the federal labor regulation in the Taft-Hartley Act. One of its declared purposes is "to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce . . . ." [8] The Act deals with the very conduct involved in this case by declaring in § 8 (b) (2) that it shall be an unfair labor practice for a labor organization to cause or attempt to cause an employer to discriminate in regard to hire or tenure of employment against an employee who has been denied union membership on some ground other than failure to tender periodic dues.[9] The evidence disclosed the probability of a § 8 (b) (2) unfair labor practice in the union's refusal to

---

[7] 353 U. S., at 9.

[8] 29 U. S. C. § 141.

[9] 29 U. S. C. § 158 (b) (2).

dispatch Gonzales from its hiring hall after his expulsion from membership and his inability thereafter to obtain employment. If a causal relation between the nondispatch and the refusal to hire is an essential element of § 8 (b)(2),[10] there was ample evidence to satisfy that requirement. A few months after Gonzales' expulsion, the union signed a multiemployer collective bargaining agreement with a hiring-hall provision. One witness testified that there was no material difference between hiring procedures before and after the date of that agreement.[11] There were other indications to the same effect.[12] In any event, since the uncontested facts disclose the probability of a § 8 (b)(2) unfair labor practice, the existence of the same must for pre-emption purposes be assumed. As we said in *Weber* v. *Anheuser-Busch, supra,* at 478, "The point is rather that the Board, and not the state court, is empowered to pass upon such issues in the first instance."

Assuming that the union conduct involved constituted a § 8 (b)(2) unfair labor practice,[13] the existence of a conflict of remedies in this case cannot be denied. Section 10 (c) of the Act empowers the Board to redress such conduct by requiring the responsible party to reimburse the worker for the pay he has lost. Relying upon the identical conduct on which the Board would premise its back-

---

[10] But cf. *International Union of Operating Engineers, Local No. 12,* 113 N. L. R. B. 655, 662–663, enforcement granted, 237 F. 2d 670.

[11] Reply Brief for Petitioner, p. 4; R. 73–74, 134.

[12] The state appellate court concluded that "employers of the type of labor provided by members of this organization only hire through the union hiring hall." 142 Cal. App. 2d 207, 214, 298 P. 2d 92, 97. The opening statement for Gonzales in the trial court declared that "everytime he applies for a job, he is told to go to the hall to get a clearance . . . ." R. 36. Gonzales' testimony on that subject was excluded as hearsay. R. 60–61.

[13] It is unnecessary to consider whether a § 8 (b)(1)(A) violation was also involved.

pay award,[14] the state court has required of the union precisely what the Board would require: that Gonzales be made whole for his lost wages. Such a duplication and conflict of remedies is the very thing this Court condemned in *Garner*.

The further recovery of $2,500 damages for "mental suffering, humiliation and distress" serves to aggravate the evil. When Congress proscribed union-inspired job discriminations and provided for a recovery of lost wages by the injured party, it created all the relief it thought necessary to accomplish its purpose. Any additional redress under state law for the same conduct cannot avoid disturbing this delicate balance of rights and remedies. The right of action for emotional disturbance, like the punitive recovery the plaintiff sought unsuccessfully in this case, is a particularly unwelcome addition to the scheme of federal remedies because of the random nature of any assessment of damages. Without a reliable gauge to which to relate their verdict, a jury may fix an amount in response to those "local procedures and attitudes toward labor controversies" from which the *Garner* case sought to isolate national labor regulation. The prospect of such recoveries will inevitably exercise a regulatory effect on labor relations.

The state and federal courts that have considered the permissibility of damage actions for the victims of job discrimination lend their weight to the foregoing conclusion. While most sustain the State's power to reinstate members wrongfully ousted from the union, they are unanimous in denying the State's power to award dam-

---

[14] The cause of action under state law arose when the union denied Gonzales the benefits of membership by refusing dispatch. Subsequent employer refusals to hire merely established the damages. With the unfair labor practice, on the other hand, employer refusal or failure to hire is an essential element of the wrongful conduct. In either case Gonzales is required to prove the same union and employer conduct to qualify for compensation.

ages for the employer discriminations that result from nonmembership.[15]

The legislative history and structure of the Federal Act lend further support to a conclusion of pre-emption. While § 8 (b)(2) and the other provisions defining unfair labor practices on the part of labor organizations were first introduced in the Taft-Hartley Act, similar conduct by an employer had been an unfair labor practice under § 8 (3) of the Wagner Act, 49 Stat. 452. Committee reports dealing with that provision leave no doubt that the Congress was prescribing a complete code of federal labor regulation that did not contemplate actions in the state court for the same conduct.

"The Board is empowered, according to the procedure provided in section 10, to prevent any person from engaging in any unfair labor practice listed in section 8 'affecting commerce', as that term is defined in section 2 (7). This power is vested exclusively in the Board and is not to be affected by any other means of adjustment or prevention.

.        .        .        .        .

"The most frequent form of affirmative action required in cases of this type is specifically provided for, i. e., the reinstatement of employees with or without back pay, as the circumstances dictate. *No private right of action is contemplated.*" [16] (Emphasis supplied.)

---

[15] *Born* v. *Laube*, 213 F. 2d 407, rehearing denied, 214 F. 2d 349; *McNish* v. *American Brass Co.*, 139 Conn. 44, 89 A. 2d 566; *Morse* v. *Local Union No. 1058 Carpenters and Joiners*, 78 Idaho 405, 304 P. 2d 1097; *Sterling* v. *Local 438, Liberty Assn. of Steam and Power Pipe Fitters*, 207 Md. 132, 113 A. 2d 389; *Real* v. *Curran*, 285 App. Div. 552, 138 N. Y. S. 2d 809; *Mahoney* v. *Sailors' Union of the Pacific*, 45 Wash. 2d 453, 275 P. 2d 440.

[16] H. R. Rep. No. 1147 on S. 1958, 74th Cong., 1st Sess. 23–24; H. R. Rep. No. 972 on S. 1958, 74th Cong., 1st Sess. 21; H. R. Rep. No. 969 on H. R. 7978, 74th Cong., 1st Sess. 21.

There is nothing in the Taft-Hartley amendments that detracts in the slightest from this unequivocal declaration that private rights of action are not contemplated within the scheme of remedies Congress has chosen to prescribe in the regulation of labor relations.[17]  It is consistent with every indication of legislative intent.  As the Act originally passed the House, § 12 created a private right of action in favor of persons injured by certain unfair labor practices.[18]  The Senate rejected that approach, and the Section was deleted by the Conference.

Special considerations prompted adoption of a Senate amendment creating an action for damages sustained from one unfair labor practice, the secondary boycott.[19]

---

[17] The new Act deleted the provision in § 10 (a) that the Board's power to prevent unfair labor practices was "exclusive," but the Committee reports make abundantly clear that the deletion was only made to avoid conflict with the new provisions authorizing a federal-court injunction against unfair labor practices (§ 10 (j) and (l), 29 U. S. C. § 160 (j) and (l)), and the provision making unions suable in the federal courts (§ 301, 29 U. S. C. § 185). H. R. Conf. Rep. No. 510 on H. R. 3020, 80th Cong., 1st Sess. 52. *Amazon Cotton Mill Co.* v. *Textile Workers Union,* 167 F. 2d 183.

[18] H. R. 3020, 80th Cong., 1st Sess.; H. R. Rep. No. 245 on H. R. 3020, 80th Cong., 1st Sess. 43–44.

[19] § 303, Labor Management Relations Act of 1947, 29 U. S. C. § 187.  An examination of the Committee reports and debates concerning this provision reveals that the additional relief was a product of congressional concern that, for this type of conduct, the Board's ordinary cease-and-desist order was "a weak and uncertain remedy." Corrective action was entirely in the discretion of the Board, and the delay involved in setting its processes in motion could work a great hardship on the victims of the boycott. S. Rep. No. 105 on S. 1126, Supp. Views, 80th Cong., 1st Sess. 54–55; 93 Cong. Rec. 4835–4838.  The Senate rejected a proposal for injunctive relief in the state courts (93 Cong. Rec. 4847), but created this federal right of action for damages.  Senator Taft, the author of the amendment, voiced its two objectives: it would effect restitution for the injured parties (93 Cong. Rec. 4844, 4858), and "the threat of a suit for damages is a tremendous deterrent to the institution of secondary boycotts and jurisdictional strikes" (93 Cong. Rec. 4858).

Aside from the obvious argument that the express inclusion of one private action in the scheme of remedies provided by the Act indicates that Congress did not contemplate others, the content of § 301 furnishes another distinguishing feature. The right of action is federal in origin, assuring the uniformity of substantive law so essential to matters having an impact on national labor regulation.[20] The right of action that the majority sanctions here, on the other hand, is a creature of state law and may be expected to vary in content and effect according to the locality in which it is asserted. Free to operate as what Senator Taft characterized "a tremendous deterrent"[21] to the unfair labor practice for which it gives compensation, this damage recovery constitutes a state-created and state-administered addition to the structure of national labor regulation that cannot claim even the virtue of uniformity.

Since the majority's decision on the permissibility of a state-court damage award is at war with the policies of the Federal Act and contrary to the decisions of this Court, it is not surprising that the bulk of its opinion is concerned with the comforting irrelevancy of the State's conceded power to reinstate the wrongfully expelled. But it will not do to assert that the "possibility of conflict with federal policy" is as "remote" in the case of damages as with reinstatement. As we have seen, the Board has no power to order the restoration of union membership rights, while its power to require the payment of back pay is well recognized and often exercised. If a state court may duplicate the latter relief, and award exemplary or pain and suffering damages as well, employees will be deterred from resorting to the curative machinery of the

---

[20] "By this provision [§ 303], the Act assures uniformity, otherwise lacking, in rights of recovery in the state courts . . . ." *United Constr. Workers* v. *Laburnum Constr. Corp.*, 347 U. S. 656, 665–666.

[21] 93 Cong. Rec. 4858.

Federal Act. The majority apparently blinks at that result in order that the state court may "fill out this remedy." To avoid "mutilat[ing]" the state equity court's conventional powers of relief, the majority reaches a decision that will frustrate the remedial pattern of the Federal Act. How different that is from *Guss* v. *Utah Labor Relations Board, supra,* where the remedial authority of a State was denied *in its entirety* because Congress had "expressed its judgment in favor of uniformity."

The majority draws satisfaction from the fact that this was a suit for breach of contract, not an attempt to regulate or remedy union conduct designed to bring about an employer discrimination. But the presence or absence of pre-emption is a consequence of the effect of state action on the aims of federal legislation, not a game that is played with labels or an exercise in artful pleading. In a pre-emption case decided upon what now seem to be discarded principles,[22] the author of today's majority opinion declared: "Controlling and therefore superseding

---

[22] Compare the characterization of the *Laburnum* case in *Weber* v. *Anheuser-Busch, supra,* with the proportions that case has assumed in today's decision.

Then: "*United Constr. Workers* v. *Laburnum Constr. Corp.,* 347 U. S. 656, was an action for damages based on violent conduct, which the state court found to be a common-law tort. While assuming that an unfair labor practice under the Taft-Hartley Act was involved, this Court sustained the state judgment on the theory that there was no compensatory relief under the federal Act and no federal administrative relief with which the state remedy conflicted." 348 U. S., at 477.

Now: "If, as we held in the *Laburnum* case, certain state causes of action sounding in tort are not displaced simply because there may be an argumentative coincidence in the facts adducible in the tort action and a plausible proceeding before the National Labor Relations Board, a state remedy for breach of contract also ought not be displaced by such evidentiary coincidence when the possibility of conflict with federal policy is similarly remote." *Ante,* p. 621.

federal power cannot be curtailed by the State even though the ground of intervention be different than that on which federal supremacy has been exercised." *Weber* v. *Anheuser-Busch, supra,* at 480. I would adhere to the view of pre-emption expressed by that case and by *Garner* v. *Teamsters C. & H. Local Union, supra,* and reverse the judgment below.