Della HILL and O. M. Cass, co-partners, doing business under the name and style of Alaska Market, Appellants,

v.

Alma Lee MOE and John Doe Moe, her husband, and Retail Clerks Union, Local No. 1689 and Retail Clerks International Association, A.F.L. Labor Organizations, Appellees.

No. 87.

Supreme Court of Alaska.

Dec. 28, 1961.

Charles E. Cole, Fairbanks, Alaska, Joseph D. Holmes, Seattle, Wash., for appellants.

Warren A. Taylor and Fred D. Crane, Taylor & Crane, Fairbanks, Alaska, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This case arose out of a labor dispute between the appellants and appellees.[1] The court below held that it had no jurisdiction over the subject matter of the action because exclusive jurisdiction was vested by federal law in the National Labor Relations Board. Whether the court was correct is the question to be decided on this appeal.

The employer owned and operated a retail grocery store and meat market in the City of Fairbanks. In October 1954 the employees of the grocery department, who were members of the Retail Clerks Union, went on strike and commenced to picket the premises. The purpose of that action, as alleged in the complaint, was to coerce the employer to enter into a labor agreement with the union which would cover the employees of the meat department.[2] The strike lasted from five to seven days, and shortly thereafter the parties entered into a collective bargaining agreement which included the meat department personnel.

In 1956 the employer commenced this action for damages. The complaint alleged that the union's activities were unlawful, that as a result of the picketing and for more than one year after it had ended the employer's customers refused to trade at the store, and that this resulted in damage to the business in excess of 100 thousand

dollars. An additional 100 thousand dollars was sought by reason of purported defamatory publications made by the union in a local newspaper. Finally, the complaint asked for 50 thousand dollars each for the employers, Hill and Cass, for alleged mental and nervous strain resulting from the union's actions. At the close of the employer's evidence, the court granted the union's motion for an involuntary dismissal on the ground of lack of jurisdiction to entertain the action. This appeal followed.

Congress has vested in the National Labor Relations Board jurisdiction over labor relations matters affecting interstate commerce.[3] The extent to which this has displaced state power to deal with such matters has been the subject of a considerable number of decisions by the Supreme Court of the United States. The body of case law that developed prior to the 1959 amendments to the Taft-Hartley Act[4] makes it clear that, subject to certain exceptions,[5] an Alaska court would not have jurisdiction over the conduct charged to the union in this case if the employer's business affected commerce within the meaning of the federal act[6], and if such conduct were potentially subject to federal regulation.[7]

The National Board has never exercised the full measure of its jurisdiction. It has refused for budgetary and policy reasons to

1. For purposes of convenience the appellants will be referred to as the "employer", and the appellees, as the "union".

2. It appears that the four employees of the meat department, who were not members of the Retail Clerks Union at the time of the strike, were in the process of formalizing a collective bargaining agreement between the employer and the Amalgamated Meat Cutters and Butcher Workmen, Local Union No. 628.

3. 49 Stat. 450 (1935), as amended, 61 Stat. 136 (1947), 29 U.S.C.A. §§ 141–187 (1956).

4. One of these amendments, as it relates to the power of the state to deal with labor disputes which may affect commerce, will be discussed later in this opinion.

5. These exceptions relate to the authority of the N. L. R. B. to cede jurisdiction to the state [29 U.S.C.A. § 160(a) (1956)], which it has not done here; and to the traditional power of a state over public safety and order, which will be discussed later in this opinion.

6. "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 49 Stat. 450 (1935), 61 Stat. 137 (1947), 29 U.S.C.A. § 152 (7) (1956). See NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 683, 71 S.Ct. 943, 95 L.Ed. 1284, 1292 (1951).

7. San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 246, 79 S.Ct. 773, 3 L.Ed.2d 775, 784 (1959).

take jurisdiction of many cases which involved essentially a local business in which the effect of the labor dispute upon commerce would not be substantial.[8] In 1950 it adopted certain standards to govern the exercise of its jurisdiction, largely in terms of annual dollar amounts of goods or services in which an employer dealt involving inflow and outflow across state lines.[9] These standards were raised upward in 1954. At the time this dispute arose the Board's jurisdictional criteria for a retail concern was a direct inflow of 1 million dollars, or an indirect inflow of 2 million dollars, or a direct outflow of 100 thousand dollars.[10]

■ The evidence showed that all sales of groceries and meat were made inside Alaska. It also showed that about seventy-five percent of the stock was purchased outside of Alaska, and that this amounted to approximately 300 to 400 thousand dollars a year. The employer argues from this that since the annual dollar inflow did not measure up to the Board's jurisdictional yardstick of 1 million dollars, there was no effect on interstate commerce; and therefore the state court was not precluded from exercising jurisdiction over the union's activities.

We cannot subscribe to this contention. Early in the history of the National Labor Relations Act the Supreme Court held that there was "no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis."[11] And in 1957 the Supreme Court refused to hold that a business could not affect interstate commerce where all sales were local and amounted to 900 thousand dollars, and where purchases from out of state amounted to 100 thousand dollars in one year.[12] In the light of these decisions we cannot hold that the employer's business did not affect commerce within the meaning of the National Act.

■ The employer contends that even where interstate commerce is affected, the states nevertheless have the power to act in labor controversies where the Board has declined or obviously would decline to take jurisdiction.[13] The employer argues that Congress in passing the National Act did not intend to create a "no-man's land" which would exist if the Board declined to act and if the state were powerless to act. Such an argument has been foreclosed by the Supreme Court's decision in Guss v.

8. Guss v. Utah Labor Relations Bd., 353 U.S. 1, 8, 77 S.Ct. 598, 1 L.Ed.2d 601, 606 (1957); NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284, 1293 (1951); Breeding Transfer Co., 110 NLRB 493 (1954); Merrifield, Federal-State Jurisdiction in Labor Relations Law, 29 Geo.Wash.L.Rev. 318, 319–320 (1960).

9. Guss v. Utah Labor Relations Bd., 353 U.S. 1, 3–4, 71 S.Ct. 943, 1 L.Ed.2d 601, 603 (1957); Merrifield, supra note 8, at 320.

10. B. N. A., The Labor Reform Law, app. F at 400 (1959); 5 Lab.L.J. 571 (Aug. 1954).

11. NLRB v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 83 L.Ed. 1014, 1019 (1939); NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 683–685, 71 S.Ct. 943, 95 L.Ed. 1284, 1292–1293 (1951)

12. Amalgamated Meat Cutters, etc. v. Fairlawn Meats, Inc., 353 U.S. 20, 22, 77 S.Ct. 604, 1 L.Ed.2d 613, 615 (1957).

13. The Board did not decline jurisdiction in this case. On November 17, 1954 the union filed with the Board a charge of unfair labor practices against the employer. This was later withdrawn by the union. In the meantime the employer, although served with a copy of the charge, failed to answer it and did not furnish the Board wtih information necessary to enable it to determine whether jurisdiction would be exercised. The employer at no time sought to invoke the Board's jurisdiction. However, in view of the fact that the employer's out of state purchases did not measure up to the Board's minimum standard, we can assume that jurisdiction over the dispute would probably have been declined by the Board.

Utah Labor Relations Board.[14] The court held there that the proviso in Section 10(a) of the act, which allows the Board to cede jurisdiction to states in certain cases [15], was the exclusive means whereby the states may be enabled to act concerning matters entrusted by Congress to the Board.[16] The court recognized the creation of a no-man's land, subject to regulation by no agency or court. But it felt that Congress had expressed its judgment in favor of uniformity, that this judgment must be respected, and that if the no-man's land were to be eliminated it would have to be done by Congress.[17]

This situation was apparently remedied by enactment of the 1959 amendments to the Taft-Hartley Act which added the following section:

· "(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: Provided, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this [Act] shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Gaum, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction." [18]

The employer relies upon this statute as ground for holding that the no-man's land has been eliminated and therefore the court below could have exercised jurisdiction over this controversy. Whatever the effect of the amendment, it has no application in this case. The incidents which gave rise to this dispute took place in 1954. There is nothing in the 1959 law to suggest that it was intended to have any effect on labor relations matters arising prior to its enactment. In fact, the opposite is suggested by the provision that "the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction *under the standards prevailing upon August 1, 1959.*" (Emphasis ours.) It is a well established rule of statutory construction that in the absence of a clear expression to the contrary a law is presumed to operate prospectively only.[19] The poten-

14. 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957).

15. This section provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise: Provided, that the Board is empowered by agreement ·with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other ·than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith." 29 U.S.C.A. § 160(a) (1956).

16. Guss v. Utah Labor Relations Bd., supra note 14, 353 U.S. at 9, 77 S.Ct. at 602, 1 L.Ed.2d at 606.

17. Id. at 10–11, 77 S.Ct. at 602–603, 1 L. Ed.2d at 607.

18. Labor-Management Reporting and Disclosure Act of 1959, § 701(c), 73 Stat. 541 (1959), 29 U.S.C.A. § 164(c) (Supp. 1960).

19. Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858, 867 (1938); 2 Sutherland, Horack, Statutory Construction, § 2201, at 115 (3d ed. 1943). ·Cf. NLRB v. Mylan-Sparta Co., 166 F.2d 485, 488 (6th Cir. 1948).

tial elimination of a no-man's land is of no assistance to the employer in this case.

■■ A basis for the assertion of state jurisdiction cannot be found from the circumstance of the Board not having determined the status of the disputed conduct, that is, whether it was of a type protected or prohibited by the National Act. It is not for us to determine this question, nor to decide what decision the Board would have made had it taken jurisdiction of the case.[20] It is enough to preclude state action if the conduct charged to the union, which was the basis of relief sought in the lower court, may fairly be assumed to have constituted an unfair labor practice under Section 8 of the National Labor Relations Act.[21] We believe that such assumption may be fairly made; for the essence of the charge against the union in the court below was that the strike and picketing was aimed at forcing the employer to discourage the meat department employees fom joining the Meat Cutters and Butchers Union and to require them to join the Retail Clerks Union if they wanted to keep their jobs.[22] We hold that the court below was correct in determining that it had no jurisdiction to give the remedy sought by the employer in this action.

■ If this were a case marked by violence, intimidation, or imminent threats to public order, then the state court would be permitted to grant compensation for the consequences as defined by the law of torts.[23] But the trial court determined that the picketing did not involve those elements of injurious conduct, and we find that the evidence supports such determination. Hence, this area for the exercise of state jurisdiction was not open to the employer.

In its conclusions of law the trial court expressed the opinion that service of process on the union had never been effectuated, and this is assigned as error. But the court prefaced its opinion by saying that such a determination was unnecessary in light of its decision on the jurisdictional question. We agree, and therefore will not pass upon that point.

The judgment is affirmed.

20. San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775, 783 (1959).

21. Id. at 244–247, 79 S.Ct. 773–779, 3 L.Ed.2d 782–784.
Section 8(b) of the Act provides in part "It shall be an unfair labor practice for a labor organization or its agents * * * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership * * *." 61 Stat. 141 (1947), 29 U.S.C.A. § 158(b) (2) (1956).

Subsection (a) (3) reads in part: "It shall be an unfair labor practice for an employer. * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." 61 Stat. 140 (1947), 29 U.S.C.A. § 158(a) (3) (1956).

22. Cf. Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953).

23. San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775, 784 (1959); International Union, United Automobile, etc. UAW–CIO v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958).