Schnell Tool & Die Corporation et, Plaintiffs, v. United Steelworkers of America, AFL-CIO, et, Defendants.

Common Pleas Court, Columbiana County.

No. 49066.   Decided March 13, 1964.

*Mr. Ralph Atkinson, Messrs. Baker, Hostetler & Patterson,* By *Mr. Russell E. Leasure,* for plaintiffs.

*Messrs. Green, Schiavoni, Murphy & Stevens,* By *Mr. Paul E. Stevens,* for defendants.

BUZZARD, J. This matter arises out of a motion filed by defendants to dismiss plaintiffs' petition for the reason that the complaint of the petition constitutes acts or conduct which lie exclusively within the jurisdiction of the National Labor Relations Board. This motion was argued orally and briefs were also supplied, as was an affidavit of the Defendants in support of the motion. Plaintiffs have also filed objections to the affidavit of the defendants, stating in substance that the motion to dismiss is in reality a demurrer and that the motion therefore should be decided as a demurrer on the facts stated in the petition alone. Section 2309.08, Revised Code, provides that a defendant may demur to a petition when it appears on its face "(2). That the court has no jurisdiction of the subject of the action;." Thus, the claim that the court has no jurisdiction of the subject matter is subject to demurrer. This goes to the substance of the petition rather than to its form. Consequently, a motion to dismiss on the grounds of lack of jurisdiction of the subject matter is an attempt to do by motion what should be done by demurrer. Therefore, the court will treat this motion to dismiss as though it were a demurrer and will consider only the allegations of the petition. (See 1 Gardner's Bates Civil Practice Section 9.44, page 288.)

For the purpose of this motion the allegations of the petition which determine whether this court has jurisdiction of the subject matter are largely concentrated in the first full paragraph commencing near the top of page two, which reads as follows:

"Beginning in early December 1962, or earlier, plaintiffs were engaged in labor negotiations with said Steelworkers and said Local Union. In said negotiations, defendant Long throughout acted as and was a member of said Steelworkers' and Local Union's 'bargaining committee' or team, and throughout acted with the apparent (and presumably actual) authority of said Steelworkers and Local Union as a representative, spokesman

and agent of theirs in various matters connected with said negotiations, including in particular the granting of an interview respecting the progress of said negotiations intentionally given by defendant Long to a reporter for The Salem News of Salem, Ohio, on Saturday morning, December 15, 1962, for publication in print in said newspaper.''

Other allegations particularly with reference to the claimed slanderous words appear at other points throughout the petition. These principal allegations show that the claimed defamatory language was used during a period when labor negotiations through a bargaining committee of the union were taking place. The plaintiffs claim in oral argument and in their briefs that Congress has not inhibited a person from suing for the tort of libel or slander even though occurring in a labor dispute. On the other hand, the Defendants claim that such language is part and parcel of the entire dispute and is protected by Sections 7 and 8 of the Labor Management Act. The Plaintiffs therefore claim that Congress has not pre-empted the field as respects suits in State courts for slander and libel; whereas, the Defendants claim that there has been pre-emption.

A consideration of the law is in order. The labor Management Relations Act as amended in 1947 furnishes the statutory basis for determining the jurisdiction of the National Labor Relations Board in this case, and, incidentally, the jurisdiction of this court over the subject matter of the suit. See Title 29 Federal Code Annotated Sections 141 to 160, inclusive, with particular reference to Sections 157, 158 and 160. Section 157 defines the rights of employees and the protection guaranteed them; Section 158 deals principally with what constitutes unfair labor practices both by the employer and employee, and Section 160 sets out the power of the National Labor Relations Board and the procedure to follow in cases before it.

The first case of import which attempted to define the separate areas in which the State and Federal Government had control in a labor dispute arose in the case of *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776 (AFL)*, 346 U. S., 485, 98 L. Ed., 228. In that case a labor union peacefully picketed an interstate trucking company for the purpose of inducing the employees to join the union and drivers for other carriers refused to cross the picket line. The State trial court

enjoined the union's conduct but the Supreme Court of Pennsylvania reversed and held that the dispute fell within the jurisdiction of the National Labor Relations Board and that consequently the State's remedies were excluded. On appeal to the Supreme Court of the United States the highest court agreed with the Pennsylvania Supreme Court and affirmed its decision, pointing out that any other view would produce conflicting adjudications between the States and the Federal Government.

In 1954, the Supreme Court of the United States had a chance for the first time to determine whether State courts retained jurisdiction in tort actions for damages arising out of labor disputes. A plaintiff contractor was unable to carry out several contracts to construct projects by reason of threats and intimidation toward his employees by members of a union. The construction company sued in the State court and obtained a substantial verdict against the union. The contention was made there that the State court had no jurisdiction and that it was a matter for the Federal Labor Management Relations Act. The Supreme Court, however, rejected the union's contention on the ground that to hold with the union would in effect grant it immunity from liability for its conduct since the Federal Act makes no provisions for damages for past acts of the kind involved therein. *United Construction Workers* v. *Laburnum Construction Corporation*, 347 U. S., 656, 98 L. Ed., 1025.

Subsequently, the Supreme Court held in an action by a labor union member against his union for damages for loss of wages and suffering resulting from a breach of his union membership contract that the Federal Act did not pre-empt the field and approved the bringing of the suit in the State court. It is in this case that the Supreme Court first mentions the doctrine of construing the Federal Act by a process of "litigating elucidation." See *International Association of Machinists* v. *Gonzales*, 356 U. S., 617, 2 L. Ed. (2d), 1018.

On the same day (May 26, 1958) the Supreme Court decided the case of *International Union, United Automobile, Aircraft and Agricultural Implement Workers of America* v. *Russell*, 356 U. S., 634, 2 L. Ed., (2d), 1030. In that case an employee had been denied access to his employer's plant by a striking union engaged in mass picketing. The Alabama courts sustained the employee's right to sue the union and the Su-

preme Court of the United States affirmed and stated that the State courts jurisdiction to award the employee compensatory and punitive damages was not pre-empted by the Federal Act. Among other things, the Supreme Court held that it was beyond the power of the National Labor Relations Board to award an employee whose person and property had been injured as a consequence of union activity recovery for medical expenses, pain and suffering, and property damages. In the light of the later decisions by the Supreme Court it is significant that in the *Russell case* there were some threats of violence directed to the plaintiff in connection with the mass picketing.

It therefore appears at this point that under the *Laburnum case* and the *Gonzales* and *Russell cases,* the Federal Act did not pre-empt the field of relief where damage accrued by reason of a tort.

However, it didn't take long for the Supreme Court, applying its announced doctrine of "litigating elucidation," to chip away and retreat from the doctrine announced in the three cases mentioned above. See *San Diego Building Trades Council* v. *Garmon,* 359 U. S., 236, 3 L. Ed (2d), 775. This case arose in California out of the efforts of a local union to organize Garmon's employees by peaceful picketing. Garmon sought and obtained in the State court an injunction and also an award of $1,000.00 damages for losses. On appeals through the State courts and to the Supreme Court of the United States, the case was remanded to the State courts for further proceeding. The State court set aside the injunction but sustained the award of damages. The Supreme Court of the United States allowed certiorari and reversed the State court because it was "arguable" that the union activity involved in the case fell within the compass of the protected "concerted activities" provision of Section 7 of the Federal Act, or was an unfair labor practice under Section 8 of such Act. It therefore appears that starting with this case, if it is even arguable that Sections 7 or 8 of the Federal Act are involved, then the states are pre-empted. This test seems weighted in favor of the Federal Act and against the States because most questions are "arguable" or debatable. Nevertheless, commencing with this case the law appears to be that if the question involved concerns the protected rights and activities under Section 7 of the Federal Act or concerns the

unfair labor practices under Section 8 of the Act, the State has no jurisdiction, even to grant relief in damages. The court states near the bottom of page 246:

"Nor is it significant that California asserted its power to give damages rather than to enjoin what the Board may restrain though it could not compensate. Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme."

The Court distinguishes the *Laburnum* and *Russell cases* on the ground that they involved violence and imminent threats to the public order and that state jurisdiction was permitted there because of the compelling state interest to maintain domestic peace.

There is nothing in the petition in the instant case to indicate that there was any threat of violence or any question of keeping the peace and maintaining law and order. The court does not feel that a mere statement of a falsehood, if it is false, constitutes violence or a threat to law and order.

The most recent cases of the Supreme Court dealing with the conflict between federal and state powers with regard to labor relations are the *Borden* and *Perko cases*, both decided June 3, 1963.

In the *Borden case* the plaintiff was a plumber and attempted to get a job in Texas through the union hiring hall. For some reason the union discriminated against him, as the result of which he filed suit against the union for damages and he recovered a judgment in the state court. The case was admitted to the United States Supreme Court and the Supreme Court reversed the state court holding that it had no jurisdiction since it was "arguable" that the defendant union's conduct either violated or was protected by the National Labor Relations Act. The Court attempted to distinguish the *Gonzales*

*case* on the ground that the latter case was focused purely on internal union matters. *Local 100, United Association of Journeymen & Apprentices* v. *Borden,* 373 U. S., 690, 10 L. Ed. (2d), 638.

In *Iron Workers Union* v. *Perko,* 373 U. S., 701, 10 L. Ed. (2d), 646, a union member sued his union for damages resulting from an alleged conspiracy by the union to deprive him of the right to continue to work as a foreman. The plaintiff obtained a judgment which was affirmed in the State courts. On appeal to the United States Supreme Court the case was reversed because the court said it was "arguable" that the dispute involved an unfair labor practice. In the last paragraph of its opinion the court states:—

"We do not of course intimate any view on the merits of any of the underlying substantive questions, that is, whether the union was guilty of a violation of the Act. It is enough to hold, as we do, that it is plain on a number of scores that the subject matter of this lawsuit 'arguably' comes within the Board's jurisdiction to deal with unfair labor practices. We therefore conclude that the State must yield jurisdiction and the judgment below must be Reversed."

This court feels that the present policy of the Supreme Court of the United States is succinctly stated in the *Borden case* as follows:—

"This Court held in *San Diego Bldg. Trades Council* v. *Garmon,* 359 U. S., 236, 3 L. Ed. (2d), 775, 79 S. Ct., 236, that in the absence of an overriding state interest such as that involved in the maintenance of domestic peace, state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of Section 7 or the prohibitions of Section 8 of the National Labor Relations Act. This relinquishment of state jurisdiction, the Court stated, is essential 'if the danger of state interference with national policy is to be averted,' 359 U. S., at 245, and is as necessary in a suit for damages as in a suit seeking equitable relief. Thus the first inquiry, in any case in which a claim of federal pre-emption is raised, must be whether the conduct called into question may reasonably be asserted to be subject to Labor Board cognizance."

However, the Plaintiffs cite a number of cases to establish that there are certain areas and situations in which the State court has jurisdiction and is not pre-empted by the Federal Courts. In *Head* v. *New Mexico Board of Examiners in Optometry*, 374 U. S., 424, 10 L. Ed (2d), 983, there was involved a conflict between a New Mexico Statute which prohibited advertising of prices of eye glasses and the State court assumed jurisdiction and sustained the State Law. On appeal to the United States Supreme Court the decision was affirmed, the Supreme Court stating briefly that such Statute does not constitute a burden on Interstate Commerce.

The case of *Florida Lime & Avocado Growers Inc.* v. *Paul*, 373 U. S., 132, 10 L. Ed (2d), 248, involved a conflict with a Statute of the State of California which prohibited the importation of avocados containing less than 8% of oil by weight. A Federal District Court denied an injunction against the enforcement of the California Statute and this ruling was appealed to the Supreme Court where it was substantially affirmed. The court seemed to feel that there was no burden placed on Interstate Commerce and that the State Statute was in exercise of ''historic police powers of the states.''

In the case of *Retail Clerks International Association* v. *Alberta Schermerhorn*, 11 L. Ed (2d), 179, an action was instituted in a Florida court by four non-union employees seeking relief against an agency shop arrangement. Florida had a so-called ''right-to-work'' law. The Florida Supreme Court held that state courts have jurisdiction to afford a remedy in such a case and the Supreme Court of the United States affirmed. It is significant, however, in this case the decision is based on Section 14(b) (29 USC Section 164[b]) which provides:

''Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial Law.''

This section of the Statute is not involved in the case at bar. Justice Douglas in the opinion calls attention to the fact that the *Garmon case* did not present the problems posed by Section 14(b) that is, whether the Congress had precluded state

enforcement of select state laws adopted pursuant to its authority. He says substantially the same thing in distinguishing the case from the *Borden* and *Perko cases*.

The court does not feel that the *Avocado case* and the *Head case* are effective to overrule or dilute the principle laid down in the *Garmon, Borden* and *Perko cases* because these latter cases specifically deal with the same Federal Labor Act which we are dealing with in this case, whereas the *Avocado case* and the *Head case* are not dealing with a Federal Labor Statute and the same problems are not present in those cases as are present in the case at bar.

The plaintiff seeks to avoid the import of these cited authorities by referring to Section 8(c) of the Act. This section reads as follows:—

"The expression of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act (Sections 151 et seq. of this Title), if such expression contains no threat of reprisal or force or promise of benefit."

The plaintiffs say that although these alleged statements of the defendants were slanderous and libelous, they did not constitute an unfair labor practice on the defendants' part and not being an unfair labor practice the National Labor Relations Board would not have jurisdiction.

The reason for the inclusion of this section in the Act is stated in the Senate & House Reports on this Bill which can be found as Note 2 on page 735 of the case of *Pittsburgh Steamship Company* v. *National Labor Relations Board,* 180 Fed. Rep. (2d), 731. Briefly, the purpose of this section was to guarantee to both employer and employee the right of free speech in their labor troubles and negotiations as long as the language did not amount to intimidation or coercion.

The plaintiffs' petition shows that negotiations were proceeding for a contract between the employer and employees and during the period of this bargaining the alleged statements were made. This right to bargain collectively was guaranteed the employees under Section 7 of the Act and they are afforded certain protection under such section of the Act and it seems

to this court that the plaintiffs cannot take out of context the alleged defamatory statements and disregard the fact that they occurred during a contract negotiation. In other words, the plaintiffs cannot lift out of the entire proceedings the statements which they allege the defendants made when they at the same time in their petition allege that there was a labor negotiation going on at the same time and out of which arose the so-called libelous and slanderous statements. Whether it was an unfair labor practice wouldn't necessarily be fatal under Section 8, as long as some guarantee of protection to the employees under Section 7 of the Act were involved. Collective bargaining and concerted action on the part of the employees are activities covered by Section 7 of the Act.

A well considered case on most of the points raised in this case is the case of *Blum* v. *International Association of Machinists*, 192 Atl. (2d), 842 (80 N. J. Superior, 37). Significantly the *Blum case* is also a damage action for libel because certain pamphlets issued by the union claimed to have libeled the plaintiff. This occurred during a period of organizing the employees of the plant where the plaintiff was manager. The union in that case also set up Section 8(c) of the Act as a defense. The court quoted from an opinion of the National Labor Relations Board which said:—

"Exaggerations, inaccuracies, partial truths, name calling and falsehoods, while not condoned, may be excused, as legitimate propaganda provided they are not so misleading as to prevent the exercise of a free choice by employees in the election of their bargaining representative."

While this court is not holding as a matter of law that the statements in the petition which are claimed to be libelous are permissible and within proper bounds within the meaning of the Act, the *New Jersey case* does show the great limits to which the National Labor Relations Board has gone in permitting exaggerations and inaccuracies. The only limitation appears to be that the statement contained no threat, reprisal or promise of benefit. The *Blum case* also makes reference to the case of *Hill* v. *Moe*, 367 Pac. (2d), 739, which also held that jurisdiction had been federally pre-empted. This court feels that the *Blum case* not only is a well considered case with reference to the legal points involved but that it also involves

a question of libel as is this case here, and it is quite persuasive on the point that even in an action for libel arising during a labor dispute the state courts have no jurisdiction.

One more thing which the court wishes to comment on. Counsel for the Plaintiffs has cited the case of *Guss* v. *Utah Labor Relations Board*, 353 U. S., 1, 1 L. Ed (2d), 601. In this case a union filed charges with the National Labor Relations Board under Section 8 of the Act, declaring that an employer was engaged in unfair labor practices. The Board declined to consider the charges on the ground that the operations were predominantly local. Thereafter the union filed the same charges with the Utah Labor Relations Board and obtained relief which was affirmed by the Supreme Court of Utah. On appeal to the Supreme Court of the United States the judgment was reversed. The Supreme Court held that Utah had no power to deal with matters within the jurisdiction of the National Labor Relations Board, even though that Board had declined to exercise its jurisdiction, if the Board had not ceded jurisdiction pursuant to the proviso in Section 10(a) of the National Labor Relations Act. In other words, even if the N. L. R. B. refuses to accept jurisdiction, the State cannot grant relief unless the National Labor Relations Board by positive act cedes jurisdiction to the State. Counsel for the plaintiffs make the argument that the Supreme Court of the United States was not familiar with the history of the Federal Act and of the report by the Congressional Committees, particularly the Conference Committee between the two branches of Congress. Counsel for Plaintiffs states that according to the Conference Report both the State and the Labor Board would have jurisdiction. He quotes from the Report:—

"By retaining the language which provides the Board's powers under Section 10 shall not be affected by other means of adjustment, the conference agreement makes clear that, when two remedies exist, one before the Board and one before the courts, the remedy before the Board shall be *in addition to,* and not in lieu of, other remedies."

This argument shows considerable scholarly research and ingenuity and also makes some sense. However, on the other hand, to accept this argument this court would have to assume

that in the seventeen years since the Act was passed in 1947 the Judges of the Supreme Court of the United States, as well as lawyers of specialized ability in the labor field and who argue these matters before the Supreme Court, were ignorant of this Conference Report. I do not make this assumption. It is not always easy to reconcile many decisions of the Supreme Court on this and related questions, and it is equally hard to follow the tortuous path laid out by the Supreme Court in labor cases by their doctrine of ''litigating elucidation.'' Nevertheless, this trial court feels that the law in these cases is just what the Supreme Court says it is and it would be presumptuous for this court to assume that the Supreme Court didn't quite know what it was doing or know what the historical background of this Act was, in the seventeen years since the Act was passed.

Consequently, this court finds that if the Plaintiffs engaged in Interstate Commerce or if its activities in any way interfere with the free flow of Commerce between the States, then this court would not have jurisdiction because the question here is ''arguably'' within the meaning of Sections 7 and 8 of the Act.

However, before the Federal Act applies the employer must engage in Interstate Commerce or the activities of the parties must in some way affect the free flow of Commerce between the States. It is conceivable that the evidence will show this to be the fact in this case. Nevertheless, the face of the petition does not show it and the court knows of no rule by which he can presume that the parties were so engaged. This may be a pure technicality in view of the great length to which the court has gone in reviewing the other jurisdictional question, but in order to be technically correct the court has to find that there is no showing on the face of the petition that Interstate Commerce is involved.

Therefore, in view of the fact that there is no such showing of Interstate Commerce involved on the face of the petition, the Motion to Dismiss is Overruled and Defendants may have their exceptions.

No. 49066. Decided May 12, 1964.

BUZZARD, J. Since the Court overruled the Defendants'

Motion to Dismiss the petition in this case because there was no showing in the petition that the Plaintiff was engaged in Interstate Commerce, the Plaintiff has amended its petition to allege such action on its part and the Defendants have filed their Demurrer to the petition as amended.

In view of the Court's lengthy Opinion on the original Motion to Dismiss, this Supplemental Opinion will be brief. The oral argument of the counsel for the Plaintiffs resolved itself into three parts:—

1. With respect to the "concerted activities" provision of Section 7 of the Act counsel argue that if it is wrong to do something singly it is equally wrong to do it in a concerted fashion.

This has reference to the claimed defamatory and libelous language appearing in the petition. In a general way the Court sees nothing wrong with such a claim that if an act is wrong when done singly it is wrong when done by a group. However, the Labor Management Relations Act specifically gives labor unions the right to organize and bargain collectively and to engage in concerted activities. It seems to the Court that this argument begs the entire question rather than furnish an answer to it.

2. It was argued that there must be an unfair labor practice under Section 8 of the Act before the National Labor Relations Board would have jurisdiction.

Referring again to *San Diego Building Trades Council* v. *Garmon*, 359 U. S., 236, 3 L. Ed. (2d), 775, the Court states in its opinion that:—

"When it is clear or may fairly be assumed that the activities which a State purports to regulate *are protected by Section 7 of the National Labor Relations Act, or constitute an unfair labor practice under Section 8,* due regard for the federal enactment requires that state jurisdiction must yield. * * *"

"If the Board decides, subject to appropriate federal judicial review, *that conduct is protected by Section 7, or prohibited by Section 8,* then the matter is at an end, and the States are ousted of all jurisdiction." (Emphasis supplied.)

As the Court said earlier in the original opinion, the words claimed to have been spoken by the Defendants were part and parcel of a pending labor dispute involving extended negotiations and protected by the Act.

3. And, finally, counsel argued with much vehemence that the recent decisions of the Supreme Court holding that the State Courts were ousted of jurisdiction if the dispute was "arguably" subject to the Act were based upon a fallacious construction of the Act and the Amendments thereto and that such decisions were not in accord with the joint House-Senate Reports when the Act was adopted. The Court has been importuned but not persuaded to blaze its own path in the interpretation of the Act even though it means ignoring or attempting to distinguish the decisions of our Supreme Court on this point. The Court has found nothing to persuade it to change its opinion on the original motion to dismiss and holds that this Court does not have jurisdiction to entertain this action. Accordingly, the Demurrer is Sustained and the action is dismissed at the Plaintiff's costs.