131 N.J. Super. 104 (1973)
328 A.2d 642
P.T. & L. CONSTRUCTION CO., INC., PLAINTIFF,
v.
TEAMSTERS LOCAL UNION NO. 469, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 30, 1973.
*107 Mr. Theodore W. Geiser for the plaintiff (Messrs. Hughes, McElroy, Connell, Foley and Geiser, attorneys).
Mr. Daniel J. Hussey for the defendant (Messrs. Jacob and David Friedland on the brief; Messrs. Friedland & Friedland, attorneys).
SALVEST, J.S.C.
The parties to this controversy are an Employer and a Union who executed a "Labor Contract" on September 15, 1969, covering the period May 1, 1969 to April 30, 1972. The project consisted of construction of new sections of Route 18 pursuant to a contract between plaintiff and the Department of Transportation. In January 1972, plaintiff was in the process of clearing a site for construction of a section of Route 18 at Colts Neck, New Jersey, when a disagreement arose concerning the use of laborers who were not members of defendant Local 469 for certain tasks at that site. Defendant claimed that plaintiff was using nonmember personnel to do labor which should have been under defendant's jurisdiction according to the contract. Plaintiff denied this allegation and in response claimed that defendant was "featherbedding" in violation of the National Labor Relations Act.[1] This dispute was not resolved in negotiations between the parties and on February 16, 1972, defendant established a picket line which was honored by several other unions. Work was halted until plaintiff conformed under protest to the Union's demands and later that month plaintiff brought suit for damages caused by the work stoppage. *108 Defendant answered contending that New Jersey courts lack jurisdiction over the subject matter because the National Labor Relations Act has preempted resolution of such disputes in state or federal courts. Defendant also asserted that the labor contract contained an arbitration clause which plaintiff had not invoked and therefore the suit was premature. Defendant now brings a motion to dismiss the complaint and the parties have stipulated the issues presented. Initially this Court must determine the merits of the jurisdictional question.
The general principle of preemption of state and federal jurisdiction by the National Labor Relations Act regarding conduct that is arguably protected or prohibited by the Act was established in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The central purpose is to insure vital uniformity of national labor policy through submission of disputes to the expertise of the NLRB. This rationale was recently reconsidered and reaffirmed by the Supreme Court in Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), where the Court concluded that the state was preempted from entertaining a suit by an individual against his union for terminating his membership in violation of the union's constitution and general laws. Although there has been some confusion during the evolution of the Garmon principle of preemption concerning its application to the variety of labor disputes, Cox, Labor Law Preemption Revisited, 85 Harv. L. Rev. 1337 (1972), it is apparent that the doctrine continues to be a viable concept.
However, the judiciary has not been unequivocally preempted by the NLRB. The first general exception to the Garmon doctrine is that a state has jurisdiction to act in a labor dispute when there is an overriding state interest, such as the interest in maintaining domestic peace and preventing violent conduct or threats to the public order. United Constr. W., etc. v. Laburnum Constr. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954); Cream-O-Land Dairy v. Local *109 680, 111 N.J. Super. 578, 582-583 (App. Div.), certif. denied, 57 N.J. 290 (1970); Gotthelf Knitting Mills, Inc. v. Local No. 222, 93 N.J. Super. 263, 270-271 (App. Div. 1966), certif. denied, 48 N.J. 577 (1967). The basis for this exception is the presumed intent that Congress would not by passage of the National Labor Relations Act preempt in areas that had traditionally been a matter of local concern or where such state determinations would have a mere peripheral effect on national labor policy. However, in Blum v. International Ass'n of Machinists, AFL-CIO, 42 N.J. 389 (1964), the New Jersey Supreme Court found that the NLRA precluded a libel action brought by a plant manager against the union for statements contained in distributed leaflets. Although a libel action is traditionally local in nature the Court held that the subject matter was arguably subject to §§ 7 and 8 of the National Labor Relations Act and thus within the sole jurisdiction of the NLRB. Subsequently the United States Supreme Court found an overriding state interest in protecting its citizens from malicious libel that would allow state jurisdiction although the dispute may be arguably subject to the NLRA. Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).
The second general exception to the Garmon principle has a statutory basis. The Labor Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185, provides as follows:
(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
By this provision Congress bestowed on federal courts the authority to interpret and enforce collective bargaining agreements, and it has been held that not only do state courts have concurrent jurisdiction to also interpret and enforce such agreements but that either court may do so even when *110 the conduct alleged is arguably protected or prohibited by the NLRA. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).
Section 301 jurisdiction further allows a federal or state court to entertain a suit by a member against his union for the latter's interference with the individual's rights under the collective bargaining agreement where it is shown that the union was by its conduct breaching its duty of fair representation of the union members. State court jurisdiction is not dislodged because the interference is arguably an unfair labor practice. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).
New Jersey courts have recognized their jurisdiction under § 301 to interpret and enforce collective bargaining agreements where disputes arise between employer, union and individual members even though the conduct objected to may arguably be protected or prohibited by the NLRA. Carpenters & Millwrights etc. v. Riggs-Distler & Co., 40 N.J. 97, 99 (1963) (Per Curiam); Donnelly v. United Fruit Co., 40 N.J. 61, 75-79 (1963); Independent Oil Workers v. Socony Mobile Oil Co., 85 N.J. Super. 453, 456-458 (Ch. Div. 1964).
It is apparent from the facts of this case that the jurisdiction of this Court cannot be founded upon a compelling state interest arising from possible threat to the public order or because the subject matter of the dispute is that which has traditionally been a matter of local law. State jurisdiction in light of the Garmon preemption doctrine must be based on § 301. The question is whether the relief sought by plaintiff employer is for the interpretation or enforcement of the collective bargaining agreement even though the conduct complained of may also be an unfair labor practice. *111 It is this Court's opinion that the answer to that question is in the affirmative.
As the United States Supreme Court noted in International Ass'n. of Machinists v. Gonzales, 356 U.S. 617, 622 n.[*], 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958) (quoting from Gonzales v. International Ass'n. of Machinists, 142 Cal. App.2d 207, 217, 298 P.2d 92, 99 (1956)), the determination of whether the NLRB has exclusive jurisdiction of an alleged unfair labor practice or whether the action is based on a breach of a collective bargaining contract for which the state has jurisdiction must be made from the character of the pleadings and the issues presented. Thus, while state courts may have jurisdiction under § 301, it remains the duty of the court to examine the pleadings and ascertain the true nature of the claim. There must be a substantial claim which provides the court with jurisdiction appearing affirmatively on the face of the complaint, although it is not necessary to allege specific violations of the collective bargaining agreement. Chasis v. Progress Mfg. Co., 382 F.2d 773 (3rd Cir.1967). Plaintiff employer here alleges the existence of a "Labor Contract" in effect at the time of the dispute and, in pertinent part, as follows:
5. Approximately one week after the work commenced, one Robert Rossi, a representative of defendant, demanded that plaintiff employ a Teamster, that is to say, a member of defendant Union, on the project.
6. At all pertinent times, plaintiff was not performing any work with respect to which plaintiff was obligated to employ a member of the defendant Union, and at all times, plaintiff has complied with the letter and spirit of the Labor Contract by employing members of the defendant Union whenever it was reasonably necessary to do so and required by the terms of the contract in question.

* * * * * * * *
11. Promptly at the inception of the strike, the plaintiff sent a telegram to defendant, the text of which is as follows:
"You are in violation of our contract in placing pickets on our Route 18 job. Your insistence on feather-bedding this project with men I don't need is a violation of our agreement and the federal law. I shall seek damages for all cost incurred due to this unwarranted strike in a court of law."
*112 12. By reason of the conduct of the defendant, which is in violation of its legal rights and which violates the duties which it owes to plaintiff, plaintiff has sustained and continues to sustain very substantial damages by reason of its inability to prosecute the work required under the terms of its contract with the State of New Jersey, and plaintiff expects that it will continue to sustain such damages in the future by reason of the delay occasioned in the prosecution of such work.
13. Conscious of its obligation to mitigate damages, but under the conditions of economic duress imposed by defendant on plaintiff as detailed above, plaintiff will, under protest, employ a member of the defendant as demanded by defendant forthwith, but only in order to enable the work to proceed, since plaintiff presently has no work at all requiring the employment of a member of the defendant Union.
14. As soon as the work of plaintiff requires the employment of a member or members of the defendant Union, it will employ such men as it is obliged to do under the contract, but until such time, plaintiff regards the employment of the man in question as pure "featherbedding", and will seek reimbursement from defendant for all damages proximately caused by the conduct of the defendant, including reimbursement for wages and fringe benefits incurred by reason of the employment of a member of defendant Union.
It is apparent from the face of the complaint that the claim is substantial in nature and not frivolous. This Court is guided by the fact that the purpose of § 301 was not to limit but to increase the number of available forums to interpret and enforce collective bargaining agreements. Dowd Box Co. v. Courtney, supra, 368 U.S. at 508-509, 82 S.Ct. at 523, 7 L.Ed.2d at 487-488; Chasis v. Progress Mfg. Co., supra, 382 F.2d at 777. In light of this Congressional purpose the jurisdiction conferred by § 301 must be broadly construed.
Admittedly plaintiff's complaint specifically alleges featherbedding which would be an unfair labor practice prohibited by the National Labor Relations Act, § 8 as amended 29 U.S.C.A. § 158 (b) (6).[2] However, the complaint also *113 alleges a breach of the contract with resulting damage. The essence of the dispute is whether the work in question was under the jurisdiction of the defendant Union. The contract provisions must be interpreted in light of the facts to determine whether the Union was correct in its opinion that the work being done belonged to it or whether the work stoppage and consequent loss suffered by plaintiff was wrongful because under the contract the Union had no right to insist on doing the work in question. This Court concludes that, based on the authority hereinbefore cited, it has jurisdiction under § 301 to entertain this suit on the contract in question and to interpret and enforce its provisions even though the conduct complained of may also be an unfair labor practice.
With jurisdiction thus established the Court is permitted to consider appropriate relief under the terms of the collective bargaining agreement. Consequently, the substance and effect of the arbitration clause must first be determined to ascertain whether the merits of the dispute can be reached. The arbitration clause is, in relevant part, as follows:
Should any dispute arise between the Employer and employees, or the Employer and the Union, concerning the application or interpretation of any provision of this contract, or concerning any term or condition of employment, or otherwise, the representatives of the Union and the representatives of the Employer shall attempt to adjust the controversy between themselves. In the event they are unable to adjust same, the dispute may, within two (2) days after the *114 request of either party, be submitted to Arbitration before a permanent Arbitrator to be designated by mutual agreement of the parties to this agreement. The term of the permanent Arbitrator will be for the duration of this agreement.
Until such time as permanent Arbitrator is selected by the parties, the dispute may continue to be submitted to the New Jersey State Board of Mediation, whose decision shall be final and binding upon the parties hereto.
If the Union decides to submit the matter to Arbitration, it shall notify the Company of this decision. The Arbitrator shall be selected by the New Jersey State Board of Mediation. The decision of the Arbitrator will be final and binding on both parties to this agreement, as well as the employee(s) involved. The Arbitrator shall be bound by this agreement and shall have no power to alter, amend, modify, add anything to, or take anything away from its provisions.
Initially it should be noted that this Court is bound by substantive federal labor law concerning arbitration clauses in collective bargaining agreements to facilitate continuity in our national labor policy. Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co., supra; Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); U.S. Pipe & Foundry Co. v. United Steelworkers of America, 37 N.J. 343, 360 (1962). Further, whether the dispute in question is arbitrable under the terms of the arbitration clause is a matter for judicial determination. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); International Union of Electrical, Radio & Machine Workers v. Westinghouse Elec. Corp., 268 F.2d 352 (3rd Cir.1959).
The interpretation of the arbitration clause must be made in light of a current policy greatly favoring the arbitration of labor disputes by the means voluntarily agreed upon by the parties. Arbitration was recognized as an essential feature of labor law to increase industrial stability by the Steelworker Trilogy. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. *115 Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Labor Management Relations Act, 1947, § 203 (d), 29 U.S.C.A. § 173 (d), itself provides: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."
New Jersey applies this liberal federal approach to the arbitration procedure in order to resolve labor disputes. Standard Motor Freight, Inc. v. Local Union No. 560, 49 N.J. 83, 95 (1967). However, there is a recognized limit to the scope of judicial inquiry. The New Jersey Supreme Court commented in Jersey Central Power & Light Co. v. Local Union No. 1289, 38 N.J. 95, 102-103 (1962), as follows:
The parties to a collective bargaining agreement contract for the judgment of men steeped in the special history and problems of the economic scene. What to a judge may seem frivolous may to arbitrators be meaningful. Moreover, arbitration is designed to yield a speedy answer, an aim which would be thwarted by preliminary litigation over the forum.
For these reasons the judicial inquiry should not extend beyond deciding whether the dispute is within the agreement to arbitrate.
Citing the Steelworker Trilogy, the Court went on to hold that "the judiciary may not examine the merits of a dispute which on its face falls within the provision for arbitration in a collective bargaining agreement". Jersey Central Power & Light Co. v. Local Union No. 1289, supra, 38 N.J. at 104. The narrow question thus to be determined is whether the dispute concerning defendant's work jurisdiction resulting in the work stoppage was one that fell within the arbitration clause executed by the parties.[3] This Court has no hesitation *116 to hold that the collective bargaining agreement providing for final and binding arbitration of "any dispute ... between ... the Employer and the Union, concerning the application or interpretation of any provision of this contract, or concerning any term or condition of employment" covers the disagreement in question. The Union's work jurisdiction *117 was a provision of the contract, there are no exceptions in the arbitration clause, and the broad scope of the clause is apparent. It may be argued that by a fair reading it is permissive rather than mandatory in nature because the arbitration clause provides that if "they are unable to adjust same, the dispute may ... be submitted to Arbitration." However, the court in Bonnot v. Congress of Independent Unions Local #14, 331 F.2d 355, 359 (8th Cir.1964) had occasion to comment on such contractual language as follows:
We should mention, perhaps, the union's suggestion that the bargaining agreement does not compel arbitration but only provides that either party "may" request it; that it is thus permissive and optional; and that neither it nor the contractor elected to arbitrate. The result claimed to follow is that the arbitration here is not mandatory. We think the result is necessarily the other way. The obvious purpose of the "may" language is to give an aggrieved party the choice between arbitration or the abandonment of its claim. The presence of this or similar language has not prevented the conclusion that a claim, if pressed, is compulsorily subject to Arbitration.
See also United Steelworkers of America v. American Mfg. Co., supra.
Lastly, the collective bargaining agreement expired April 30, 1972. Although not argued by the parties, it is clear that the right to have arbitration of a dispute which arose during the existence of the collective bargaining agreement or enforcement of an arbitration award does not expire with the expiration of that agreement, absent some time limitation therein. United Steelworkers of America v. Enterprise Wheel & Car Corp., supra; Jersey Central Power & Light Co. v. Local Union No. 1289, supra, 38 N.J. at 107; Botany Mills, Inc. v. Textile Workers Union, 50 N.J. Super. 18, 28-29 (App. Div.), certif. granted 27 N.J. 320 (1958), appeal dismissed April 27, 1959. There is no time limit concerning the arbitration of disputes in the agreement in question.
The parties to this action were also parties to a collective bargaining agreement in effect on the date of the allegedly *118 wrongful work stoppage. The agreement contained a standard arbitration clause which provides for final and binding arbitration of disputes of this nature. This Court concludes that the proper course is to hold the parties to the procedure for resolution of contractual disagreements mutually agreed upon by them, and orders a stay in this proceeding pending arbitration. Mason-Dixon Lines, Inc. v. Local Union No. 560, 443 F.2d 807 (3rd Cir.1971).
NOTES
[1] The National Labor Relations Act, § 8 as amended 29 U.S.C.A. § 158 (b) (6) provides:

It shall be an unfair labor practice for a labor organization or its agents 
* * * * * * * *
to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed....
[2] There is a dearth of case law on alleged violations of the featherbedding provision because of the limited construction and effect given to it by subsequent Supreme Court decisions. NLRB v. Gamble Enterprises, Inc., 345 U.S. 117, 73 S.Ct. 560, 97 L.Ed. 864 (1953); American Newspaper Publishers Ass'n v. NLRB, 345 U.S. 100, 73 S.Ct. 552, 97 L.Ed. 852 (1953). See also Annot., 31 A.L.R.2d 508 (1953). However, the California Supreme Court has recently faced the issue in Consolidated Theatres, Inc. v. Theatrical Stage Employees Union, Local 16, 69 Cal.2d 713, 73 Cal. Rptr. 213, 447 P.2d 325 (1968). Plaintiff was a theatre owner seeking compensatory damages resulting from picketing and an injunction against the union preventing the union from attempting to coerce plaintiff into employing unneeded members at one of its theatres. The court held that since the conduct was arguably prohibited by § 8 (b) (6) the NLRB had primary jurisdiction. However, the court had earlier held that a 1931 agreement was not valid at the time of the dispute and thus the court was precluded from basing jurisdiction on § 301. No such problem exists here as it is admitted that a contract was in full force and effect at the time of the disagreement between the parties.
[3] In Local 174, Teamsters, Chauffeurs, Warehousemen & Holpers of America v. Lucas Flour Co., supra, the Supreme Court of the United States held that a clause requiring the parties to submit disputes to final determination by arbitration implied an obligation not to strike over the disputes. Plaintiff here contends that the holding in Lucas Flour means that where the Union elects to strike rather than demand arbitration of a dispute which it admits is arbitrable, the employer then has a right to also waive arbitration and bring an action for breach of contract. However, in Drake Bakeries, Inc. v. Local 50, American Bakery, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), a case more on point, an employer brought an action for breach of a collective bargaining agreement after the Union called a strike in violation of a no-strike provision in the agreement. The Court held that considering the policy greatly favoring arbitration as a solution to labor disputes and because the agreement provided that all complaints, disputes and grievances would be subject to arbitration, the granting of a stay pending arbitration was proper. The Court distinguished its holding in Lucas Flour thusly:

In that case, unlike the present one, the union conceded that there had been a strike over a grievance which the union had agreed to submit to arbitration. The only question in dispute was liability vel non. The union did not contend that, and the Court did not consider whether, the employer's damage claim should have been taken to an arbitrator. And, of course, the Court did not consider whether the union's breach of the no-strike clause constituted a repudiation or waiver of arbitration of the damage claim.
Drake Bakeries, Inc. v. Local 50, American Bakery, supra, 370 U.S. at 262 n. 8, 82 S.Ct. at 1351, 8 L.Ed.2d at 480. In the present case it is very material to note that not only did the collective bargaining agreement not contain a no-strike clause, it in fact provided that a work stoppage is not a breach of the contract if the employer first violates the agreement. The collective bargaining agreement provided as follows:
(1) The Employer shall not enter into any other written or oral agreement with any employee or group of employees covered by this agreement which in any way violates any of the provisions of this agreement. In the event any such agreement is entered into with the consent of any employee or group of employees, the Union reserves the right to issue a work stoppage, and such order shall not be considered as a breach of this labor contract. The Union shall not accord to any Employer party to a like labor agreement more advantageous wages, hours, or working conditions than are contained herein. Such action by the Union shall be considered a breach of this labor contract.